STATE, DEPARTMENT OF HIGHWAYS, v.
CLARA HAZEL HALVORSON.

181 N. W. (2d) 473.

November 20, 1970—No. 42327.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Deputy
Attorney General, and *Frederick S. Suhler, Jr.,* Special Assistant
Attorney General, for appellant.

*Albert H. Newman,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, Kelly,
and Rosengren, JJ.

PETERSON, JUSTICE.

The state appeals from an order of the Hennepin County Municipal Court rescinding an order of the commissioner of high-

ways which directed revocation of defendant's driver's license.[1]

These proceedings arise out of the so-called implied-consent law, L. 1961, c. 454, coded as Minn. St. 169.123, which is part of the Highway Traffic Regulation Act. Its remedial purpose is to promote traffic safety. Its purpose is to be achieved, as expressed in the title of its original enactment, by "requiring consent to permit a chemical test for intoxication as a prerequisite to operating a motor vehicle, and providing penalties for a refusal to submit to such test." The statutory sanction for refusal of a driver to permit the test is mandatory revocation of the driver's license for a period of 6 months, without provision for the granting of any limited permit.

The imposition of the penalty, however, is otherwise made subject to restrictive conditions. Although revocation is administratively ordered by the commissioner, § 169.123, subds. 5 to 7, provide for a judicial hearing upon demand of the driver, with a final judicial determination either rescinding or sustaining the commissioner's proposed order. The refusal of the driver to submit to a chemical test is subject to sanction only if, as stated in § 169.123, subd. 2:

"* * * The test shall be administered at the direction of a peace officer, when (1) the officer has reasonable and probable grounds to believe that a person was driving or operating a motor vehicle while said person was under the influence of an alcoholic beverage, and (2) the said person has been lawfully placed under arrest for alleged commission of the said described offense in violation of Minnesota Statutes, Section 169.121 [operating a motor vehicle while under the influence of an alcoholic beverage or narcotic drug], or an ordinance in conformity therewith. * * *"

And, most important to the issue at hand, the term "peace

---

[1] The state may appeal to this court from an adverse decision in the municipal court in a proceeding pursuant to Minn. St. 169.123. State Department of Highways v. Normandin, 284 Minn. 24, 169 N. W. (2d) 222.

officer" is defined by § 169.123, subd. 1, *for purposes of this section only,* to mean—

"* * * a state highway patrol officer or full time police officer of any municipality or county having satisfactorily completed a prescribed course of instruction in a school for instruction of persons in law enforcement conducted by the university of Minnesota *or a similar course considered equivalent by the commissioner of [highways]*." (Italics supplied.)

The commissioner of highways (now the commissioner of public safety), to effectuate the legislative mandate in the foregoing italicized language of § 169.123, subd. 1, promulgated State of Minnesota, Dept. of Highways, Reg. 1. The regulation, quoted in full in the margin,[2] provides that a course of instruction is

---

[2] "Hwy 1 Rules and Regulations Establishing Standards for Courses of Instruction for Peace Officers Under Chapter 454
Laws of 1961
"(a) Purpose. The purpose of this regulation is to carry out the mandate of the legislature and to effectuate that mandate as set forth in the laws of Minnesota 1961, Chapter 454, Section 1, with reference to a prescribed course of instruction in a school for instruction of persons in law enforcement conducted by the University of Minnesota or a similar course considered equivalent by the Commissioner of Highways.
"(b) Scope. The scope of this regulation is confined within the framework of and consistent with the Laws of Minnesota 1961, Chapter 454, Section 1.
"(c) Definitions
"(1) Peace Officer. Peace Officer shall mean a state highway patrol officer or fulltime peace officer of any municipality, or sheriff, or fulltime deputy sheriff of any county.
"(2) Course of Instruction. Course of instruction shall mean formal class or classes not necessarily given at one location or in a single, contiguous [sic] period of time.
"(d) General. For the purposes of Chapter 454, Laws of Minnesota 1961, a course of instruction for peace officers shall be considered equivalent by the Commissioner of Highways if:
"(1) It is conducted by a municipal, county, state or federal govern-

considered equivalent to one conducted by the University of Minnesota if it is conducted by a stated government agency and includes "not less than 80 hours of instruction * * * *in the laws, techniques, and the peace officer's responsibilities in the enforcement of the provisions of the Highway Traffic Regulation Act."* (Italics supplied.)

The issue for decision is whether the police officer who would have directed administration of the chemical test to defendant, had she not declined, met the peculiar qualifications prescribed by § 169.123. More specifically, two issues are presented: (1) Whether the trial court should have taken judicial notice of Dept. of Highways, Reg. 1; and, (2) if so, whether the testimony of the testing officer sufficiently proved that he was so qualified as a "peace officer."

■ Judicial notice of Reg. 1 is governed by the Administrative Procedure Act, Minn. St. 15.01 to 15.41. Section 15.0412 provides that a state agency[3] may promulgate reasonable substantive rules[4] to carry out the duties and powers granted; provided, however, that the agency holds a noticed public hearing upon the proposed rule, with approval of the attorney general as to its form and legality, and thereafter promptly files the adopted rule with the secretary of state. Section 15.0413 provides for the further filing of the rule in the office of the commissioner

ment agency or a college or university, accredited by one of the six regional accrediting associations.

"(2) It includes not less than 80 hours of instruction in general police work and specific instruction in the laws, techniques, and the peace officer's responsibilities in the enforcement of the provisions of the Highway Traffic Regulation Act."

[3] Section 15.0411, subd. 2, defines "agency" to include "any state officer * * * having a statewide jurisdiction and authorized by law to make rules * * *."

[4] Section 15.0411, subd. 3, defines the term "rule" to include "every regulation, including the amendment, suspension, or repeal thereof, adopted by an agency, whether with or without prior hearing, to implement or make specific the law enforced or administered by it * * *."

of administration, in which case a rule so adopted "shall have the force and effect of law."[5] Sections 15.046 and 15.047 provide

---

[5] We take judicial notice of the records of the secretary of state and the commissioner of administration relating to the filing of Dept. of Highways, Reg. 1. The public records of the secretary of state show the following certification of Reg. 1:

"CERTIFICATION

"Order Number 32369

"A public hearing pursuant to notice duly given, having been duly held by me in Room 815 of the State Highway Building, St. Paul, Minnesota at 10:00 o'clock a. m. on December 14, 1961, now then:

"Pursuant to authority vested in me by law and particularly by Chapter 454, Section 1, Laws of 1961, I do hereby promulgate, prescribe, and adopt the attached and foregoing rules and regulations relating to and providing for the Standards for Courses of Instruction for Police Officers.

"Dated at St. Paul, Minnesota, this 19th day of December, 1961.
"/s/ J. C. Marshall
James C. Marshall
Commissioner of Highways

"The Attorney General, under provisions of Minnesota Statutes 1957, Section 15.0412, hereby approves the attached and foregoing rules and regulations, promulgated and adopted by the Commissioner of Highways on the 19th day of December, 1961.
"WALTER F. MONDALE
Attorney General
By: /s/ John R. Mur[?]

"Dated this 20th day of December, 1961.
"STATE OF MINNESOTA
DEPARTMENT OF STATE
FILED
Dec. 20, 1961 - 10:30 a. m.
/s/ Joseph L. Donovan
Secretary of State"

A copy of Reg. 1 is on file with the commissioner of administration and bears the stamped recital that it was filed on June 16, 1964 (the additional requirement for filing with the commissioner of administration "on or before July 1, 1964," having been enacted by L. 1963, c. 822).

for the periodic publication of all rules and regulations filed with the secretary of state,[6] and § 15.048 provides:

"The filing or publication of a rule, regulation, or order raises a rebuttable presumption that:

"(1)   The rule or regulation was duly adopted, issued, or promulgated;

"(2)   The rule or regulation was duly filed with the secretary of state and available for public inspection at the day and hour endorsed thereon;

"(3)   The copy of the rule or regulation is a true copy of the original rule or regulation; and

"(4)   All requirements of sections 15.046 to 15.049 and regulations prescribed thereunder relative to such regulations have been complied with."

Section 15.049 provides:

"Judicial notice of any rule, regulation, or order duly filed or published under the provisions of section 15.046 to 15.049 shall be taken."

We hold, on this statutory basis, that the trial court should have taken judicial notice of Reg. 1. The record indicates, however, that the trial court may not have had immediately available to it a copy of the regulation. The representative of the attorney general did not have a copy of the regulation with him and apparently could not recall from memory its language. The trial court, therefore, should not be unduly faulted for its failure judicially to notice the text of the regulation. Where a court is asked to take judicial notice of an agency regulation, the identity and contents of which are not disclosed in formal pleadings, counsel should be prepared to exhibit to the court the relevant contents of the regulation, either by tendering a copy of the published regulation or by reference to some other readily available

---

[6] State of Minnesota, Dept. of Highways, Reg. 1 has been published, and a copy is on deposit in the State Law Library.

official report disclosing its contents. The function of judicial notice is to expedite litigation by eliminating the cost or delay of formally proving matters of fact which are otherwise clearly demonstrable by resort to unquestionable sources of information. It is unrealistic to assume that a trial court will in all circumstances have actual knowledge of the vast number of administrative regulations of which it is expected to take judicial notice, whether the matter is judicially noticeable by statute or otherwise.

■ The evidence, however, was ruled insufficient to prove that the testing officer had completed the prerequisite course of instruction considered by the commissioner as the equivalent of a course of instruction in law enforcement conducted by the University of Minnesota. Officer Douglas Oltman, the testing officer, testified that he had been a full-time police officer in the Minneapolis Police Department since 1951; that he had received 80 hours of formal classroom instruction and in-service training at the department's Bryant station, conducted by its training division "in conjunction with the FBI and the State of Minnesota," which he described only as instruction "in general police work and enforcement of traffic laws"; that he had received 2 weeks' formal classroom instruction in the Northwestern Traffic Institute in 1965 (the nature of which was not otherwise indicated); and that he had taken a 44½-hour course in the operation and theory of the breathalizer conducted by the State Bureau of Criminal Apprehension in 1968, for which the state had given him a certificate of completion.

Officer Oltman's duties on the day he confronted the defendant driver were, as a traffic officer, to record on video tape the behavior of persons under arrest for alleged driving while under the influence of an alcoholic beverage and to arrange for their chemical testing. He did not, however, testify that he had received, in the words of Reg. 1, "specific instruction in the laws, techniques, and the peace officer's responsibilities in the enforcement of the provisions of the Highway Traffic Regulation Act."

Although we might surmise that more detailed interrogation of Officer Oltman would have established that he had had the requisite course of instruction, we cannot hold as a matter of law that his special qualifications were proved. A license revocation proceeding is civil in nature, notwithstanding the vague language in § 169.123, subd. 6, that the judicial hearing "shall proceed as in a criminal matter." State Department of Highways v. Normandin, 284 Minn. 24, 26, 169 N. W. (2d) 222, 224. The defendant, therefore, is not clothed with those substantive constitutional rights associated with criminal matters. The defendant is not entitled to a presumption of innocence, and the state is not required to establish compliance with statutory conditions by proof beyond a reasonable doubt. The legislature nevertheless has manifested an intent that the peace officer's qualifications must be proved by a fair preponderance of the evidence.

Whether or not the legislature would better achieve its basic statutory purpose by a clearer indication as to whether both the arresting officer[7] and the testing officer must be "peace officers" and, more importantly, whether the legislature, or in this

---

[7] We do not decide whether, as defendant contends, the arresting officer, like the testing officer, must be a "peace officer" as defined in § 169.123. The trial court did not directly rule on the question. The arresting officer, Officer James Mossey, had been a police officer with the Minneapolis Police Department for some 5 years and had received 6 weeks' of formal instruction "in general police work and traffic law enforcement," which would probably not meet the test of Reg. 1. We are inclined to the view, however, that the lawfulness of the arrest is to be determined by general standards for peace officers and not by the extraordinary standards of § 169.123. The statute seemingly requires only that the testing officer have reasonable and probable grounds to believe that a person was driving a motor vehicle while under the influence of an alcoholic beverage, which in some circumstances could be established by the report to him from the arresting officer, supplemented by his own independent observations. Cf. State v. Radil, 288 Minn. 279, 179 N. W. (2d) 602.

case the commissioner of public safety,[8] should more clearly define the special qualifications, if any, of such officers is not for us to decide. We, like the trial court, must take the statute and the regulation as we find them.

Affirmed.

---

[8] L. 1969, c. 1129, Art. I, § 1, created the Department of Public Safety and Art. I, § 18, transferred all powers and duties in regard to driver's licensing and safety responsibility from the commissioner of highways to the commissioner of public safety. Art. X, § 1, subd. 1, of this government reorganization act continues in effect the existing regulations of the commissioner of highways.