STATE OF HAWAII, Plaintiff-Appellee, *v.* SHOICHI NAKAHARA, Defendant-Appellant

NO. 10241

(REPORT NO. C-07802)

JUNE 5, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

## OPINION OF THE COURT BY TANAKA, J.

Defendant Shoichi Nakahara (Defendant) appeals his conviction for the offense of driving under the influence of intoxicating liquor (DUI) in violation of Hawaii Revised Statutes (HRS) § 291-4 (Supp. 1984).[1] The dispositive issue on appeal is whether the district court erred in admitting into evidence the test result of the Intoxilyzer 4011AS (the Intoxilyzer)[2] where the operator of the Intoxilyzer had less than the required hours of instruction and training and had not been issued an appropriate permit.[3] We answer yes and reverse.

On July 25, 1984, Defendant was involved in a traffic accident in Hilo, Hawaii. Police officer Samuel Thomas (Thomas), who investigated the accident, arrested Defendant for a DUI offense, and administered the Intoxilyzer test to Defendant after obtaining his consent. The test revealed 0.14 per cent by weight of alcohol in Defendant's blood.

---

[1] HRS § 291-4(a) (Supp. 1984) provides:

A person commits the offense of driving under the influence of intoxicating liquor if:

    (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor; or

    (2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

[2] The Intoxilyzer is a breath-testing instrument used to determine a person's blood alcohol concentration.

[3] Defendant also contends that the Intoxilyzer test result should have been excluded as evidence because the police failed or refused to give him a blood test in addition to the breath test. *See* HRS § 286-151 (Supp. 1984). Our disposition of the appeal does not require a discussion of this issue.

During the bench trial, the district court noted that "there appear to be some technical violations of the Department of Health Rules and Regulations relating to permits . . . and relating to training hours, so far as Officer Thomas is concerned." Reporter Saffery's Transcript at 17. It ruled, however, that "these kinds of technical violations" did not require suppression and admitted the Intoxilyzer test result into evidence.[4] *Id.* The court found Defendant guilty of the DUI charge and imposed a sentence of a 90-day license suspension and a fourteen-hour alcohol abuse rehabilitation program.

I.

The legislature has established certain presumptions relating to evidence of intoxication based on the amount of alcohol in a person's blood. *See State v. Tengan,* 67 Haw. 451, 691 P.2d 365 (1984). For example, under the provisions of HRS § 291-5(a) (Supp. 1984), in a criminal prosecution of a DUI offense, "ten-hundredths per cent or more by weight of alcohol in the defendant's blood . . . shall be competent evidence that the defendant was under the influence of intoxicating liquor at the time of the alleged violation." It is,

---

[4] After the trial the district court entered its written findings of fact and conclusions of law which stated in relevant part:

That the Hawaii County Police Department does not issue individual permits to qualified operators of the intoxilyzer.

\* \* \*

That the number of hours of instruction and training received by the operator of the intoxilyzer, in the above-entitled case, was less than eight hours.

\* \* \*

The Court concludes . . . that there were technical violations of provisions of Title 11, Chapter 111 [of the Administrative Rules], on the part of the Hawaii County Police Department relative to the intoxilyzer.

However, the Court further concludes that such technical violations of Title 11, Chapter 111, do not require the suppression of the intoxilyzer tests [sic] results nor do such violations require that the test results be deemed inadmissible.

Record at 51-52.

therefore, of utmost importance that the testing to determine the blood alcohol concentration from a person's blood or breath be accurate. *See State v. Graham,* 360 So.2d 853 (La. 1978).

By its enactment of HRS § 321-161 (1976),[5] the legislature has placed "[t]he responsibility of maintaining 'scientific and technical control of chemical testing for blood alcohol' " on a statewide basis on the Department of Health. *State v. Tengan,* 67 Haw. at ____, 691 P.2d at 369.

As directed by HRS § 321-161, the Director of Health has promulgated rules covering the testing of blood, breath, and other bodily substances for alcohol concentration, formerly contained in Chapter 47, Public Health Regulations, but now in Chapter 111 of Title 11 of the State's Administrative Rules (hereinafter the Rules).

Based on the foregoing legislative scheme and objective, we hold that unless there has been strict compliance with Chapter 111 of the Rules, the State may not use the Intoxilyzer test result as proof of a defendant's violation of HRS § 291-4. *See Fuenning v. Superior Court,* 139 Ariz. 590, 680 P.2d 121 (1983); *Keel v. State,* 609 P.2d 555 (Alaska 1980); *State v. Gerber,* 206 Neb. 75, 291 N.W.2d 403 (1980).

II.

Section 11-111-4 of the Rules in pertinent part reads:

*Operator of breath testing instruments.* An operator of breath testing instruments shall be responsible for the proper perfor-

---

[5] HRS § 321-161 provides:

Chemical testing for blood alcohol concentration. (a) The department of health shall establish and administer a statewide program relating to chemical testing of blood-alcohol concentrations for the purposes of chapter 286, part VII, and chapters 291 and 291C, with the consultation of the state highway safety coordinator. Under the program, appropriate procedures shall be established for specifying:

(1) The qualifications of personnel who administer chemical tests used to determine blood alcohol concentrations;

(2) The procedures for specimen selection, collection, handling, and analysis; and

(3) The manner of reporting and tabulation of the results.

(b) The director of health may adopt rules and regulations pursuant to chapter 91 necessary for the purposes of this section.

mance of analysis of breath samples, proper record keeping, and proper reporting of results.

    (1) Any person employed by a county police department, may qualify as an operator by:

        (A) Having successfully completed training as specified in this section approved by the department; or

        (B) On the effective date of this chapter have not less than one (1) year's experience in the operation of the approved breath testing instrument to be utilized; or

        (C) Being able to exhibit through examination and demonstration or both to the department sufficient skill in the operation and interpretation of results of the approved testing instrument to be utilized.

    (2) Training programs for an operator shall:

* * *

        (B) Consist of a total of eight (8) hours of [specified] subjects[.]

Section 11-111-8 of the Rules provides in pertinent part:

    (b) The chief of police of the respective county's [sic] shall issue the appropriate permits or renewals to persons who qualify under the applicable provisions of §§ . . . 11-111-4 of this chapter.

* * *

    (d) Permits shall automatically terminate two (2) years from the date issued unless terminated or revoked prior to such date. All renewal requests shall be submitted as required in § 11-111-8(a) and (b).

Here, the district court found that Thomas had less than eight hours of instruction and training, the minimum required for an operator of an Intoxilyzer under section 11-111-4 of the Rules.

Therefore, he was not a qualified operator under the Rules.[6] Moreover, there was blatant disregard of section 11-111-8(b) which requires a county's chief of police to issue appropriate permits to a person who qualifies as an operator under section 11-111-4.

Under such circumstances, the Intoxilyzer test result was inadmissible as evidence. *See State v. Bruins,* 315 So.2d 293 (La. 1975); *State, Department of Highways v. Halvorson,* 288 Minn. 424, 181 N.W.2d 473 (1970); *Otte v. State,* 172 Neb. 110, 108 N.W.2d 737 (1961); R. Donigan, *Chemical Tests and the Law* at 99 (1966). *Cf. State v. Jones,* 316 So.2d 100 (La. 1975); *State v. Mullis,* 38 N.C. App. 40, 247 S.E.2d 265 (1978).

Reversed and remanded for a new trial.

*Steven K. Christensen* for defendant-appellant.

*Nelson Y. Nabeta,* Deputy Prosecuting Attorney, for plaintiff-appellee.

---

[6] There was no evidence of Officer Thomas qualifying under section 11-111-4(1)(B) or (C) of the Rules.