Gerald C. **MICHAELIS,**
Petitioner, Respondent,

v.

**COMMISSIONER OF PUBLIC SAFETY,** Appellant.

No. C3–84–2172.

Court of Appeals of Minnesota.

July 30, 1985.

Review Denied Oct. 11, 1985.

Kenneth Meshbesher, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Jean M. Boler, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

The Commissioner of Public Safety appeals from an order of the trial court rescinding the revocation of respondent Gerald C. Michaelis' driver's license. The trial court found the commissioner failed to prove that Michaelis' test results accurately revealed an alcohol concentration of .10 or more because the breathalyzer operator had not been properly recertified. We reverse.

## FACTS

Michaelis was stopped on October 7, 1984, after a Hennepin County Deputy Sheriff observed Michaelis' vehicle weave across the center line of a highway five times. After being placed under arrest for driving while under the influence, Michaelis agreed to take a breathalyzer test, which was administered by the deputy. The test indicated a blood alcohol concentration of .15. Michaelis' driver's license was revoked pursuant to Minn.Stat. § 169.123, subd. 4 (1984). Michaelis petitioned for judicial review claiming the test results were invalid and unreliable and, therefore, inadequate to sustain the revocation of his driver's license. *See* Minn.Stat. § 169.123, subd. 6(3) (1984).

The trial court rescinded the revocation for the sole reason that the deputy was not a certified breathalyzer operator at the time of testing. The deputy had been certified as a breathalyzer operator in September 1982 for one year but was not required to attend a refresher course to become recertified because of the pending introduction of the new Intoxilyzer 5000. In the spring of 1984, the deputy obtained an Intoxilyzer operator's certificate.

## ISSUE

Did the Commissioner of Public Safety show that the test results were reliable and trustworthy even though the breathalyzer operator had not been recertified?

## ANALYSIS

The State, as the proponent of the breathalyzer test, "must establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability." *State v. Dille*, 258 N.W.2d 565, 567 (Minn.1977). After a prima facie showing of trustworthy administration, "it is 'incumbent upon defendant to suggest a reason why the * * * test was untrustworthy.'" *Tate v. Commissioner of Public Safety*, 356 N.W.2d 766, 768 (Minn.Ct. App.1984) (quoting *Dille*, 258 N.W.2d at 568).

Minn.Stat. § 169.123, subd. 3 (1984) provides:

> The person administering a breath test shall be fully trained in the administration of breath tests pursuant to training given by the commissioner of public safety.

*Id.*

█ The BCA's failure to recertify the deputy, alone, is not a sufficient reason in this case to bar the breathalyzer test result. It is not disputed that the deputy was fully trained in 1982 in the administration of breath tests. Any subsequent recertification is at the discretion of the commissioner.

> Any person who has satisfactorily completed a course given or approved by the commissioner or his acting agents in the use of an instrument specially manufactured to analyze a specimen of breath to determine the alcohol concentration may administer a breath test at the discretion of a peace officer. After completion of the described course such person *may* be required to *periodically* demonstrate, to the commissioner or his duly authorized and acting agents, his competence to satisfactorily operate the instrument.

Minn.Rules 7502.0400 (Supp.1984) (emphasis added).

The overall aim of the statute and rule for administering breath tests is to ensure that breath test instrument operators are trained to accurately operate the instruments so that evidence of intoxication sufficient to require revocation of drivers' licenses is reliable.

*Quimby v. State, Department of Public Safety,* 351 N.W.2d 629, 631 (Minn.1984).

■ There is no requirement that an operator hold an operators certificate at the time of testing. The commissioner is given broad discretion in setting the training standards for breathalyzer operators. *See id.* The commissioner, through the BCA, chose not to require the deputy to submit to a recertification process because the Breathalyzer was being replaced by the Intoxilyzer 5000 and the deputy was trained and certified on the latter. Only periodic review is necessary. *See id.* (recertification of operator was every one *or* two years after formal training).

The trial court in rescinding the revocation of Michaelis' driver's license, relied on our decision in *Haegele v. Commissioner of Public Safety,* 353 N.W.2d 704 (Minn.Ct. App.1984). In *Haegele,* we held the use of a test ampoule "that did not meet the minimum standards established by the Bureau of Criminal Apprehension made the breathalyzer test result unreliable." *Id.* at 705.

*Haegele* can be distinguished because in the case at hand, there is no argument that the testing procedures weren't properly followed. The deputy testified that the breathalyzer was in proper working order and the chemicals in proper condition. *See State, Department of Public Safety v. Habisch,* 313 N.W.2d 13, 15–16 (Minn.1981) (noncompliance with BCA recommendation to replace simulator solution every 30 days did not invalidate test results where the machine was in proper working order and the chemicals in proper condition).

This matter can also be distinguished from *State, Department of Public Highways v. Halvorson,* 288 Minn. 424, 181 N.W.2d 473 (1970), relied upon by the dissent, in which the Commissioner had not established that the officer administering the test was qualified to do so. Here, the commissioner had certified the deputy in 1982, and although he hadn't been recertified, we cannot hold he was unqualified to operate a breathalyzer given the commissioner's broad discretion in requiring periodic demonstrations of competence.

■ Non-certification of the deputy at the time of testing did not render the breathalyzer test result invalid and unreliable.

## DECISION

Test result indicating an alcohol concentration of .10 was valid and reliable even though the breathalyzer operator had not been recertified at the time of testing.

Reversed.

LESLIE, Judge, dissenting:

I respectfully dissent. Minn.Stat. § 169.-123, subd. 3 (1984) specifically states that a person administering a breath test *"shall be fully trained"* by the Commissioner of Public Safety. Regulations promulgated by the commissioner indicate that an officer may be required "to periodically demonstrate * * * his competence to satisfactorily operate the instrument." Minn.Rules, part 7502.0400 (Supp.1984). In this instance Deputy grimsby had obtained only a one-year certification on the Breathalyzer. It is undisputed that his certification had expired, he had not attended a refresher course, and he had not been recertified on the Breathalyzer. He was therefore not "fully trained," and under ordinary circumstances would have been required to demonstrate his competence as a Breathalyzer operator in order to obtain recertification. Because the commissioner chose to certify Grimsby on the new Intoxilyzer instead of the Breathalyzer does not mean, as the majority concludes, that Grimsby remained certified and trained on the Breathalyzer.

In *State, Dept. of Highways v. Halvorson,* 288 Minn. 424, 181 N.W.2d 473 (1970), the supreme court addressed the statutory requirement that a chemical test be administered by a "peace officer." The trial

court had recinded the revocation of a driver's license because the commissioner had not established that the peace officer met the special qualifications prescribed by the implied consent laws. The supreme court agreed:

> Although we might surmise that more detailed interrogation of [the officer] would have established that he had had the requisite course of instruction, we cannot hold as a matter of law that his special qualifications were proved. A license revocation proceeding is civil in nature * * * The defendant, therefore, is not clothed with those substantive constitutional rights associated with criminal matters. The defendant is not entitled to a presumption of innocence, and the state is not required to establish compliance with statutory conditions by proof beyond a reasonable doubt. *The legislature nevertheless has manifested an intent that the peace officer's qualifications must be proved by a fair preponderance of the evidence.*

*Id.* at 431, 181 N.W.2d at 477 (emphasis supplied). The court concluded that because the commissioner had not established the officer's qualifications, the rescission of the driver's license should be affirmed. *Id.* Likewise, in the present situation I would affirm the trial court's decision to rescind the revocation and reinstate Michaelis' driver's license.