Timothy BOUTIN, petitioner, Appellant,

v.

Gothriel LaFLEUR, Commissioner of Corrections, et al., Respondents.

No. C1–97–1490.

Supreme Court of Minnesota.

April 22, 1999.

712

Bradford Colbert, Attorney at Law, St. Paul, for appellant.

Hubert H. Humphrey, III, Minnesota Attorney General, St. Paul, Sara DeSanto, Assistant Attorney General, St. Paul, for respondent.

OPINION

RUSSELL A. ANDERSON, J.

Timothy Boutin was charged with two counts of criminal sexual conduct in the third degree in violation of Minn.Stat. § 609.344, subd. 1 (1998), one count of assault in the third degree in violation of Minn.Stat. § 609.223 (1998), and one count of misdemeanor assault in the fifth degree in violation of Minn.Stat. § 609.224, subd. 1(1) and (2) (1998) as the result of an incident involving his girlfriend. Boutin pleaded guilty to third-degree assault. Prior to his release from confinement, Boutin was informed that he would be required to register under Minn. Stat. § 243.166 (1998) as a predatory offender. Boutin now challenges the constitutionality of requiring him to register under the statute.

On November 13, 1994, Boutin was living in an apartment in Isanti County with his girlfriend, Denise Rathman. At approximately 2:30 a.m., Rathman returned home from an evening out. Unknown to Rathman, Boutin was home waiting up for her and confronted her, accusing her of having sexual relations with another man. An argument ensued and Boutin pushed Rathman into a wall, causing a serious injury to the back of her head that required several stitches.

A short while later, according to Rathman, Boutin forced her to have sexual intercourse with him. A few hours later, at approximately 9 a.m., Rathman alleged that Boutin again had nonconsensual sexual intercourse with her. During a subsequent interview, Boutin admitted to police that he had sexual intercourse with Rathman, stating that "[s]he said she didn't want to and I still did it I guess." Boutin claimed that Rathman frequently said she did not want to have sexual intercourse but that she often cooperated as she did on this occasion. Boutin also told police that he felt that he was guilty only of "abuse," and not of "rape."

Prior to trial, Rathman recanted the portion of her story in which she said that Boutin forced her to have sex with him. Boutin then agreed to plead guilty to the charge of third-degree assault and to an upward durational departure from the pre-

sumptive sentence of 25 months to 40 months. During his guilty plea, Boutin agreed that there were two aggravating circumstances which allowed for an upward durational departure in sentencing: (1) his past history of domestic abuse of Rathman; and (2) having sexual intercourse with Rathman after assaulting her and inflicting substantial bodily harm. Boutin was sentenced to 40 months confinement and the remaining charges were dismissed.[1]

Prior to Boutin's release from confinement, his case manager informed him that he would have to register as a predatory offender as required by section 243.166. Boutin registered as instructed and then brought this action against the Commissioner of Corrections seeking a declaration that the registration requirement violated his constitutional rights and asking the court to permanently enjoin the Commissioner from requiring his registration in the future. Following a hearing on cross-motions for summary judgment, the trial court granted the Commissioner's motion. The court of appeals affirmed, and we granted Boutin's petition for further review to determine whether the registration requirements of Minn.Stat. § 243.166 violate Boutin's constitutional rights. We affirm.

### I.

On appeal from summary judgment, we review the record to determine if there are genuine issues of material fact and whether the district court erred in its application of the law. *See Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). In this case the material facts are not in dispute and both Boutin and the Commissioner contend that they are entitled to summary judgment as a matter of law. [1–3] The interpretation of statutes is a question of law which we review de novo. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993) (citation omitted). Accordingly, we are not bound by a lower court's interpretation of statutes. *See id.* Because Minnesota stat-

utes are presumed constitutional, we exercise our power to declare a statute unconstitutional with extreme caution and only when absolutely necessary. *See In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989) (citing *City of Richfield v. Local No. 1215*, 276 N.W.2d 42, 45 (Minn.1979)). Therefore, a party challenging a statute has the "very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." *State v. Merrill*, 450 N.W.2d 318, 321 (Minn.1990).

On appeal to this court, Boutin argues: (1) that requiring him to register despite the fact that he was not convicted of a "sex offense" is, in his words, "absurd and unreasonable"; (2) that by requiring his registration under section 243.166, the Commissioner has violated Boutin's right to substantive due process by infringing on his presumption of innocence; and (3) that by requiring his registration under section 243.166, the Commissioner has violated Boutin's right to procedural due process because he did not have an opportunity to confront the charges against him.

### II.

We begin first with a description of the registration requirements of section 243.166, which provides:

A person shall register under this section if:

(1) the person was charged with or petitioned for a felony violation of or attempt to violate any of the following, and convicted of or adjudicated delinquent for that offense or of another offense arising out of the same set of circumstances: * * *

(iii) criminal sexual conduct under section 609.342; 609.343; 609.344; or 609.345 * * *.

Minn.Stat. § 243.166, subd. 1(a) (1998).

Once an offender is charged with and convicted of a crime that satisfies these ele-

---

1. Boutin appealed his sentence, challenging the length of the sentencing court's upward durational departure. In an unpublished decision, the court of appeals determined that the sentencing court did not abuse its discretion in sentencing Boutin, noting that "taking advantage of the victim's weakened physical state, by having sexual relations with her immediately after inflicting substantial bodily harm, was an act of particular cruelty." *State v. Boutin*, No. C8–95–1708, 1996 WL 56505, at *2 (Minn.App.1996).

ments, the offender must be notified of his duty to register. *See* Minn.Stat. § 243.166, subd. 2 (1998). Such notice can be accomplished in one of two ways. First, the sentencing court can "tell the person of the duty to register" and have that person "read and sign a form stating that the duty of the person to register * * * has been explained." *Id.* Or, if the court fails to so instruct, "the assigned corrections agent shall notify the person of the requirements of [the registration statute]." *Id.*[2]

Once instructed regarding the duty to register, the offender must comply with three requirements. First, the offender must submit a signed registration form[3] which contains "information required by the bureau of criminal apprehension," along with "a fingerprint card, and photograph of the person taken at the time of the person's release from incarceration or, if the person was not incarcerated, at the time the person initially registered under this section." Minn.Stat. § 243.166, subd. 4(a) (1998). Second, the offender must sign and return an annual address verification form. *See* Minn.Stat. § 243.166, subd. 4(c)(1) (1998). Finally, the offender must notify law enforcement officials in writing at least five days prior to any change in address. *See* Minn.Stat. § 243.166, subd. 3(b) (1998).

### III.

■ We turn next to Boutin's argument that he should not be forced to register because the provisions of section 243.166 do not require that he register. Boutin contends that section 243.166 does not require him to register because he was not convicted of one of the enumerated felony offenses listed in subd. 1(a)(1) of section 243.166.

■ The object of statutory interpretation is to ascertain and effectuate legislative intent. *See* Minn.Stat. § 645.16 (1998). If statutory language is plain and unambiguous, the court must look only to the plain meaning of the statutory language. *See* Minn.Stat. § 645.16; *Wegener v. Comm'r of Revenue*, 505 N.W.2d 612, 617 (Minn.1993) (concluding that a court may look beyond plain language only if the literal meaning of a statute leads to an absurd result that utterly departs from legislative purpose).

Subdivision 1(a)(1) of section 243.166 states that a person shall register if the person was charged with "a felony violation of or attempt to violate any" enumerated felony offense, and was "convicted of or adjudicated delinquent for that offense or another offense arising out of the same set of circumstances." Minn.Stat. § 243.166, subd. 1(a)(1). Upon its enactment in 1991, this statute only required that persons convicted of certain enumerated felony offenses register upon release from prison. *See* Act of June 1, 1991, ch. 285, §§ 3 and 13(a), 1991 Minn. Laws 1325, 1329. In 1993 the legislature amended the statute to require that a person register if convicted of an enumerated felony or "another offense arising out of the same set of circumstances." *See* Act of May 20, 1993, ch. 326, art 10, § 1, 1993 Minn. Laws 2090.

■ The statutory language of section 243.166 has a plain and logical meaning, particularly when read in the context of the 1993 amendment. From 1991 to 1993, the statute required registration only of persons convicted of or adjudicated delinquent for an enumerated felony. *See* Act of June 1, 1991, ch. 285, §§ 3 and 13(a), 1991 Minn. Laws 1325, 1329. In 1993 the legislature amended the statute to require that a person register if convicted of an enumerated felony or another offense arising out of the same set of circum-

2. In this case, Boutin was not informed by the sentencing court of the requirement of registration but was instead notified by his assigned corrections agent.

3. Boutin's registration form is captioned, "Sex Offender Notification and Registration Form State of Minnesota Statute 243.166." Including the term "Sex Offender" in the caption of the form could be misunderstood as indicating that Boutin was convicted of a sex offense. However, while the caption is not as accurately phrased as it could be, the offense to which Boutin pleaded guilty, third-degree assault, and the sentence he received, are precisely identified on the form. In addition, the form also indicates in bold print "PRIVATE DATA FOR LAW ENFORCEMENT USE." We are satisfied that law enforcement will not be misled by the caption to the registration form.

stances[4] if initially charged with an enumerated offense. *See* Act of May 20, 1993, ch. 326, art 10, § 1, 1993 Minn. Laws 2090.

■ Boutin argues that the statutory phrase, "another offense arising out of the same set of circumstances" should be read to mean, "another [enumerated predatory] offense arising out of the same set of circumstances." Boutin contends that the amendment was only aimed at offenders convicted of another "enumerated predatory offense" which arose out of the same set of circumstances as another charged enumerated predatory offense. It is not logical that the legislature would have chosen the language it did if such a result was intended. Inserting the phrase "another enumerated predatory offense" in this statute, as Boutin argues, makes the language redundant. By simply applying the statute, a person convicted of another enumerated predatory offense arising out of the same set of circumstances would already be required to register. The statute does not differentiate between enumerated predatory offenses, it simply requires that a person register if convicted of any enumerated predatory offense – regardless of which set of circumstances the conviction arises out of or how many other enumerated predatory offenses are charged or result in conviction. *See* Minn.Stat. § 243.166. Boutin's interpretation therefore makes the phrase "another offense" superfluous. Such an interpretation is contrary to reason and the principle of statutory construction that "a statute is to be construed, if possible, so that no word, phrase, or sentence is superfluous, void, or insignificant." *See Duluth Firemen's Relief Ass'n v. City of Duluth,* 361 N.W.2d 381, 385 (Minn.1985) (citation omitted).

Therefore, because Boutin was charged with an enumerated predatory offense and was convicted of another offense which arose out of the same set of circumstances as the charged predatory offense, we conclude that he was required to register under the provisions of section 243.166.

### IV.

■ We next turn to the question of whether the registration statute is constitutional as applied to Boutin. Boutin argues that section 243.166 violates his constitutional right to substantive due process by infringing on his presumption of innocence because the statute presumes that he is guilty of an enumerated predatory offense even though he was not convicted of such an offense. The Due Process Clauses of both the Minnesota and United States Constitutions provide that the government cannot deprive a person of "life, liberty, or property without due process of law." U.S. Const. amends. V, XIV; Minn. Const. art. I, § 7. Both clauses prohibit "certain arbitrary, wrongful government actions, regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (citation omitted); *see also Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 453 (Minn.1988) (stating that "[t]he due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the Constitution of the United States.").

■ If section 243.166 implicates a fundamental right, the state must show a legitimate and compelling interest for abridging that right. *See In re Blodgett,* 510 N.W.2d 910, 914 (Minn.1994) (discussing fundamental interest in being free from physical restraint). Where no fundamental right is at stake, judicial scrutiny is not exacting and substantive due process requires only that the statute not be arbitrary or capricious; in other words, the statute must provide a reasonable means to a permissible objective. *See State v. Behl,* 564 N.W.2d 560, 567 (Minn. 1997) (citing *Bowers v. Hardwick,* 478 U.S.

---

4. The dissenting opinion would reverse and remand because the trial court failed to make a finding that the offense Boutin was convicted of, third degree assault, arose out of the same set of circumstances as the charged offense of criminal sexual misconduct in the third degree. We are satisfied, on this record, that the offense of third degree assault arose out of the same set of circumstances that supported the charge of criminal sexual misconduct in the third degree. Boutin admitted, at the time that he entered his plea, that the circumstances were aggravated by the fact that he had sexual intercourse with Rathman after assaulting her and inflicting substantial bodily harm.

186, 191–96, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986)).

■ Though not expressly enumerated in the constitution, we have recognized the presumption of innocence as a fundamental right. *See State v. Edwards*, 269 Minn. 343, 348, 130 N.W.2d 623, 626 (1964) (citations omitted). However, we have also held that such a fundamental right only applies to statutes which are punitive, or criminal, in nature. *See State, Dep't of Highways v. Halvorson*, 288 Minn. 424, 431, 181 N.W.2d 473, 478 (1970).

■ When the legislature enacted section 243.166, it did not indicate whether the statute was intended to be punitive or regulatory. Such a determination is necessary in order to ascertain whether Boutin's fundamental right to the presumption of innocence is implicated. In *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), the United States Supreme Court outlined the following factors to be used in such an analysis:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment – retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 168–69, 83 S.Ct. 554 (citations omitted) (emphasis in original).

When these factors are applied in this case, it is clear that the statute is regulatory. First, registration does not require an affirmative disability or restraint, it only requires that the person register with law enforcement and inform the state of any change of address. In addition, the registration statute does not restrict Boutin's ability to change residences at will or even to move out of state. Nor is registering a permanent requirement; Boutin is only required to register and update his address for 10 years. *See* Minn.Stat. § 243.166, subd. 6(a) (1998).

Second, historically such registration statutes have not been regarded as punishment. *See Lambert v. California*, 355 U.S. 225, 229, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (stating that registration laws are "akin to licensing statutes"); *see also State v. Manning*, 532 N.W.2d 244, 249 (Minn.App.1995) (holding that section 243.166 is regulatory), *rev. denied* (Minn. July 20, 1995).

Third, the registration statute does not promote the traditional aims of punishment since it does not involve confinement and is not intended to exact retribution. The statute also, at least in Boutin's case, does not require community notification or any other public disclosure, but instead involves "private data" that "may be used only for law enforcement purposes." Minn.Stat. § 243.166, subd. 7 (1998).[5] Finally, the primary purpose of the statute is to create an offender registry to assist law enforcement with investigations. Therefore, we conclude that section 243.166 is a civil, regulatory statute and that the presumption of innocence does not attach. Simply requiring Boutin to register does not amount to a finding of guilt of an enumerated predatory offense. Therefore, the statute does not implicate Boutin's fundamental rights.

■ However, even if a fundamental right is not implicated, in order to pass constitutional muster the registration statute must still meet the rational basis standard of review. *See United States v. Carolene Prods. Co.*, 304 U.S. 144, 153–54, 58 S.Ct. 778, 82 L.Ed. 1234 (1938) (stating that the rational basis test requires the challenged legislation to be supported by any set of facts either known or which could reasonably be assumed); *United States v. Osburn*, 955 F.2d 1500, 1505 (11th Cir.) (stating that "any rationale Congress 'could' have had for enacting the statute can validate the legislation, re-

---

**5.** Boutin neither cites nor challenges the constitutionality of Minn.Stat. § 244.052 (1998), which in some circumstances – not applicable to Boutin – mandates public disclosure of registration information, and therefore, this case does not raise the issues addressed in *Matter of Risk Level Determination of C.M.*, 578 N.W.2d 391 (Minn. App.1998).

gardless of whether Congress actually considered that rationale at the time the bill was passed"), *cert. denied,* 506 U.S. 878, 113 S.Ct. 223, 121 L.Ed.2d 160 (1992). The rational basis standard requires: (1) that "the act serve to promote a public purpose," (2) that the act "not be an unreasonable, arbitrary or capricious interference" with a private interest, and (3) that "the means chosen bear a rational relation to the public purpose sought to be served." *Contos v. Herbst,* 278 N.W.2d 732, 741 (Minn.1979).

In applying this standard, the Supreme Court noted:

> States are not required to convince the courts of the correctness of their legislative judgments. Rather, those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision maker.

*Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) (citations omitted).

 While conceding that the state has a legitimate interest in registering predatory offenders, Boutin claims that the state does not have an interest in registering nonpredatory offenders because the registration of nonpredatory offenders will dilute the list of predatory offenders and minimize its law enforcement effectiveness. This argument is not persuasive. Keeping a list of such offenders is rationally related to the legitimate state interest of solving crimes. Therefore, we hold that section 243.166 does not violate Boutin's constitutional right to substantive due process.

### V.

 In Boutin's second constitutional challenge, he argues that his constitutional right to procedural due process was violated when he was required to register as a predatory offender without first being confronted with such charges. When procedural due process is at issue, we must first determine whether a protectable liberty interest is at stake. *See In re Conservatorship of Foster,* 547 N.W.2d 81, 85 (Minn.1996); *see also*

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

The Supreme Court has stated that a liberty interest is implicated when a loss of reputation is coupled with the loss of some other tangible interest. *See Paul v. Davis,* 424 U.S. 693, 701–02, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (adopting the so-called "stigma-plus" test). Boutin argues that he meets the "stigma-plus" test because he has suffered a loss of reputation coupled with the burden of complying with the registration statute.

Being labeled a "predatory offender" is injurious to one's reputation. *See Paul,* 424 U.S. at 697, 96 S.Ct. 1155 (stating that "[i]mputing criminal behavior to an individual is generally considered defamatory *per se* "); *Neal v. Shimoda,* 131 F.3d 818, 829 (9th Cir.1997) (holding that there is no doubt about the "stigmatizing consequences of being labeled a sex offender"). While it is true that the information regarding Boutin's case is available to the general public in the form of court documents, there is a distinct difference between the mere presence of such information in court documents and the active dissemination of such information to the state's law enforcement community.

 However, as the Supreme Court noted in *Davis,* to bring a successful procedural due process challenge a person must suffer more than mere stigma, the injury to reputation must also be coupled with the loss of some other recognizable interest. *See Davis,* 424 U.S. at 710, 96 S.Ct. 1155 (stating that liberty or property interests receive constitutional protection only if they have been "initially recognized and protected by state law"). Boutin claims that complying with the requirements of the registration statute amounts to the loss of a recognizable interest. This argument fails because there is no recognizable interest in being free from having to update address information. Such a requirement is a minimal burden and is clearly not the sufficiently important interest the "stigma-plus" test requires. *See id.*

In the alternative, Boutin urges this court to step away from the "stigma-plus" federal constitutional standard and recognize, under the Minnesota Constitution, a protectable lib-

erty interest in reputation alone. While it is within our power to do so, *see State v. Oman,* 261 Minn. 10, 21, 110 N.W.2d 514, 522–23 (Minn.1961) (holding that this court is not bound to follow interpretations of the Supreme Court in interpreting the Minnesota Constitution), we decline to recognize a protectable liberty interest in reputation alone and instead embrace the federal "stigma-plus" standard. *See State v. Fuller,* 374 N.W.2d 722, 726–27 (Minn.1985) (stating that we will not "cavalierly construe our constitution more expansively than the United States Supreme Court has construed the federal constitution").

Boutin's constitutional right to procedural due process has not been violated.

Affirmed.

## PAUL H. ANDERSON, J. (dissenting).

I respectfully dissent. Appellant, Timothy Boutin, was charged with two counts of felony criminal sexual conduct in the third degree in violation of Minn.Stat. § 609.344, subd. 1(c) (1998), one count of felony assault in the third degree in violation of Minn.Stat. § 609.223 (1998), and one count of misdemeanor assault in the fifth degree in violation of Minn.Stat. § 609.224, subd. 1(1) or (2) (1998). Boutin pleaded guilty to the single count of third-degree assault and the other charges against him were dismissed.

The record is clear that at the time he entered his guilty plea, Boutin did not admit that he committed felony criminal sexual conduct and he makes no such admission on appeal. He did admit to the police that he had sexual intercourse with the complainant on both the evening and the morning in question, even though the complainant did not want to have intercourse. In his statement to the police, he admitted he was guilty of abuse, but adamantly denied he was guilty of criminal sexual conduct. When entering his guilty plea, Boutin agreed that he "had some sexual relations" with the complainant later that evening and early the next morning and that the court could take this fact into account when sentencing him for assault.

Boutin was sentenced on May 12, 1995 to 40 months in prison, an upward departure from the presumptive sentence of 25 months. He was given credit for time served since his initial incarceration on November 15, 1994. When entering his guilty plea and at sentencing, Boutin agreed that there were two aggravating circumstances that permitted the upward departure; one, his past history of domestic abuse of the complainant, and two, his having sexual intercourse with the complainant after having assaulted and inflicted substantial bodily harm upon her.

At Boutin's sentencing hearing and in its sentencing order, the court did not make a finding that the dismissed felony criminal sexual conduct charges arose out of the same set of circumstances as the third-degree assault conviction. Further, it is undisputed that the court did not inform Boutin that as a result of his guilty plea he would be required to register as a predatory sex offender under Minn.Stat. § 243.166. Rather, prior to his release from prison and as required by the statute, the Commissioner of Corrections informed Boutin that he would be required to register as a predatory sex offender.

The relevant part of the sex offender registration statute is set forth in the majority's opinion. Under the statute, if Boutin is to be required to register as a predatory sex offender, he must have been convicted of either an offense enumerated in the statute or "another offense arising out of the same set of circumstances." It appears that the reference to the same set of circumstances contained in the statute refers to the charged enumerated offense.

Third-degree assault, Minn.Stat. § 609.223, the offense for which Boutin was convicted, is not one of the offenses enumerated in section 243.166; but felony criminal sexual conduct, Minn.Stat. § 609.344, subd. 1(c), the offense for which Boutin was initially charged and which charge was subsequently dismissed pursuant to Boutin's plea, is an enumerated offense under section 243.166. Therefore, under the statute, if Boutin's third-degree assault conviction arose out of the same set of circumstances as the dismissed criminal sexual conduct charges, Boutin is apparently subject to the registration requirements in section 243.166.

To this point, I am in agreement with the majority's analysis, but it is here that our respective analytical routes diverge. Specifically, the majority finds or assumes that the district court made a finding that the charged, but later dismissed, offenses of felony criminal sexual conduct arose out of the same set of circumstances as the third-degree assault. My review of the record convinces me that the district court did not make a specific finding either that the criminal sexual conduct with which Boutin was charged occurred or that the events leading to this charged offense arose out of the same set of circumstances as the crime of conviction, third-degree assault. It seems fundamental to me that if the serious consequences of section 243.166 are to be imposed upon Boutin or anyone else, we must, at a minimum, require that the district court make such a specific finding. As an appellate judge, I am unwilling to make a factual finding so critical to the outcome of this case.

There should be no mistaking that, at the time of his assault upon the complainant, Boutin was a very unsympathetic person. He had a history of domestic abuse which found its roots in a jealous and possessive attitude towards the complainant. He had seriously mistreated her in a manner that a civilized society cannot countenance. On the night in question, he brutally assaulted the complainant by throwing her against a wall with such force that her head was severely lacerated and the wall was damaged. Later that same evening and early the next morning, he exploited the complainant's vulnerable condition and on two occasions engaged in sexual relations with her. The fact that Boutin and complainant had "been together" for seven years, shared an apartment, were the parents of a four and one-half-year-old son, and both may have been intoxicated does not mitigate, much less excuse, such behavior.

Boutin's behavior was such that he was charged with felony criminal sexual conduct and he was convicted of felony third-degree assault. But the former charges against him were dismissed pursuant to a plea agreement agreed to by the state. Moreover, as I previously stated, the record before us lacks any

finding that an essential element of section 243.166 was either admitted or proved—that the felony third-degree assault of which Boutin stands convicted arose out of the same circumstances as the dismissed charges of felony criminal sexual conduct.

There is no doubt that the consequences of section 243.166 are serious and, because of these serious consequences, that procedural due process must be followed. The statute imposes on Boutin conditions that are rigorous and confining. Upon release from prison, Boutin must register with his corrections agent as soon as one is assigned. *See* Minn. Stat. § 243.166, subd. 3(a) (1998). If he does not have a corrections agent because he is not under supervision, then he must register with the local law enforcement agency in the community where he resides. *See id.* The form used for registration is labeled "Sex Offender Notification and Registration Form—State of Minnesota Statute 243.166." The form is sent to (a) the Bureau of Criminal Apprehension (b) the offender's corrections agent; (c) corrections CO records; and (d) the offender. A photograph and fingerprint card must be enclosed with the form. *See* Minn.Stat. § 243.166, subd. 4(a) (1998). When signing the form, the offender must acknowledge that he understands the following:

I have been notified of my duty to register as a sex offender in accordance with Minn. Stat. 243.166. I understand that I must register for a period of ten years from the date that I was initially registered, or until my probation, supervised release, or conditional release period expires, whichever occurs later. If I was committed under Minn.Stat. 253B.185, the ten year registration period does not include the period of commitment. I understand that I must register all changes of address at least 5 days prior to changing residence, including moving to another state. I will make this notification in writing to my current Minnesota or Federal corrections agent, or, if I do not have a corrections agent, I must notify the law enforcement agency in the community in which I reside.

I understand that I am legally required to supply the requested data under Minn.

Stat. 243.166. I also understand that failure to comply or to provide false information is a gross misdemeanor and any subsequent violation is a felony.

I understand that the information provided will be used for law enforcement purposes, and other purposes established by law. I also understand that it is a gross misdemeanor to provide false information in the completion of this form and I attest to its accuracy of information.

As the aforementioned acknowledgment sets forth, the offender must register for a minimum period of ten years from the date of the initial registration and must give notice every time his residency is changed, which notice must be in writing and given five days before each move. *See* Minn.Stat. § 243.166, subds. 3(b) and 6 (1998). If the offender fails to comply with the registration statute, he faces a substantial penalty—a gross misdemeanor conviction. *See* Minn. Stat. § 243.166, subd. 5 (1998). A second violation constitutes a felony. *See id.* Further, at the time Boutin was required to register, an offender was deemed to have moved when he stayed at any address longer than three days and evinced an intent to take up residence there. *See* Minn.Stat. § 243.166, subd. 3(b) (1996).

Because the consequences of falling under the purview of section 243.166 are serious, I, unlike the majority, would not use the modifier "only" when referring to the fact that an offender must register as a sexual predator or that the period of registration lasts for a minimum of ten years. These are serious restrictions for a person living in a free society such as ours. It is worthy to note that what separates our society from totalitarian states is that we take individual freedoms seriously and will not deprive citizens of those freedoms without strict adherence to the procedural requirements of the law. Unfortunately, absent a finding by the district court, procedural due process was not met in this case.

Had the district court made a finding that the criminal sexual conduct charges arose out of the same set of circumstances as the assault, I have no doubt that we would not have before us today the issue of whether Boutin is required to register as a sex offender. With this procedural safeguard in place, Boutin would undoubtedly have been more fully aware of the consequences of his guilty plea and we would not be tempted to make factual findings at this stage of the proceedings. But, as tempting as it may be to make our own finding based upon police reports and unverified statements, to do so is improper. Therefore, I conclude that we have no choice but to reverse the court of appeals and remand this matter to the district court.

Because I would reverse and remand on the grounds that the district court failed to make a proper finding as to an essential element of Minn.Stat. § 243.166, I conclude that it is unnecessary to reach the statutory interpretation and constitutional issues addressed by the majority.

PAGE, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.

LANCASTER, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.