**In the Matter of the WELFARE OF J.L.Y., Child.**

No. C6–98–2211.

Court of Appeals of Minnesota.

July 20, 1999.

Review Granted Sept. 28, 1999.

·

Mike Hatch, Attorney General, St. Paul, for respondent State of Minnesota.

David J. Hauser, Otter Tail County Attorney, Karen A. Cooper, Assistant County

Attorney, Fergus Falls, for respondent county.

John M. Stuart, State Public Defender, Charlann Winking, Assistant Public Defender, Minneapolis, for appellant J.L.Y.

Considered and decided by CRIPPEN, Presiding Judge, TOUSSAINT, Chief Judge, and LANSING, Judge.

## OPINION

LANSING, Judge

The juvenile court adjudicated J.L.Y. delinquent and ordered disposition, including a requirement that he receive a medical evaluation and take the medication Ritalin, if prescribed. We affirm the adjudication, strike the provision relating to medication, and reverse and remand for written findings on the remaining disposition.

## FACTS

The facts underlying the adjudication and disposition are not in dispute. Eleven-year-old J.L.Y. constructed a "MacGyver" pop-bottle bomb from instructions he found on the Internet and set it off in the alley behind a store in Fergus Falls around 4:00 in the afternoon. The bomb, which consisted of a pop bottle filled with a combination of tin foil and toilet cleaner, lifted the bottle into the air, expanded the bottle, melted a hole in it, and made a considerable amount of noise.

The delinquency petition alleged possession of an explosive or incendiary device, a felony under Minn.Stat. § 609.668, subds. 2 & 6a (1998). J.L.Y. admitted the petition. He had no history of delinquent behavior before this offense. He had been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) in 1995 and had some behavior-related difficulties at school. J.L.Y. began taking Ritalin in 1995. The Ritalin initially helped his concentration, but in 1996, both J.L.Y.'s parents and his teacher noted that the drug appeared to have no effect on his behavior. His parents, in consultation with their doctor, decided to increase the dose for a trial period. When neither J.L.Y.'s mother nor his teacher observed any positive effect, the medication was discontinued. Dexedrine was discussed, but J.L.Y.'s parents decided against medication for ADHD.

At the disposition hearing, the state recommended that J.L.Y. be adjudicated a juvenile delinquent and placed on indefinite probation and that, as conditions of probation, the court order 35 hours of community service work and participation in individual and family counseling. J.L.Y.'s counsel proposed that the court stay adjudication and place him on probation for up to two 90–day periods, with the conditions that he complete 35 hours of community service and participate in a restorative justice meeting with a member of the bomb squad and police officers to discuss bombs and their destructive capabilities.

The court adjudicated J.L.Y. delinquent, placed him on indefinite probation, and as terms and conditions ordered participation in counseling, 25 hours of community service, and consultation with a physician and taking any prescribed medications. The order, which consisted of a preprinted statement with blanks filled in, stated that the findings of fact in support of the disposition were "contained in the transcript of these proceedings and incorporated herewith."

## ISSUES

I.   Is the juvenile court required to make the statutory dispositional-alternative findings for its determination to adjudicate rather than stay adjudication of a juvenile?

II.  Did the juvenile court exceed its authority and violate J.L.Y.'s constitutional right to privacy and his parents' right to make medical decisions on his behalf with its order that he take any medications prescribed by his physician?

III. Did the juvenile court make sufficient written findings of fact in support of the disposition, as required by statute and rule?

## ANALYSIS

### I

The juvenile court must provide written findings supporting a delinquency disposition, including (a) why the disposition serves the interests of the child, and (b) what alternative dispositions were considered by the court and why the alternative dispositions were not appropriate. Minn. Stat. § 260.185, subd. 1 (1998); *see also* Minn. R. Juv. P. 15.05, subd. 2 (incorporating and elaborating these requirements). J.L.Y. argues that the juvenile court erred by not selecting what he considers the least restrictive means for restoring him to law-abiding conduct, namely, a stay of adjudication with certain conditions, and by failing to make findings required for a juvenile disposition in Minn.Stat. § 260.185, subd. 1.

■ We find nothing in the statute that requires particularized findings on the court's decision to impose or withhold adjudication of delinquency. The particularized findings, including the finding on the least restrictive means for restoring a juvenile to law-abiding conduct, are required in determining a disposition, but not when deciding whether to adjudicate or stay adjudication. The dispositions listed in subdivision 1 are separate from the subdivision 3 provisions allowing a court to continue an adjudication. *Compare* Minn.Stat. § 260.185, subd. 1, *with* Minn.Stat. § 260.185, subd. 3 (1998). Neither do the juvenile rules require dispositional findings on a determination of whether to adjudicate or stay adjudication. *Compare* Minn. R. Juv. P. 15.05, subd. 2(A) (requiring written findings for disposition) *with* Minn. R. Juv. P. 15.05, subds. 1, 4(A) (no written-finding requirement for stay of adjudication).

■ The juvenile court has broad discretion in determining whether to continue an adjudication in a delinquency proceeding. Minn.Stat. § 260.185, subd. 3; *In re Welfare of J.B.A.*, 581 N.W.2d 37, 39 (Minn.App.1998), *review denied* (Minn. Aug. 31, 1998). The court "may" continue adjudication when "it is in the best interests of the child to do so and when the child has admitted the allegations contained in the petition." Minn.Stat. § 260.185, subd. 3; *see* Minn. R. Juv. P. 15.05, subd. 4(A) ("When it is in the best interests of the child and the protection of the public to do so, the court may continue the case without adjudicating the child."). Imposing an adjudication within the limits prescribed by the legislature is not an abuse of discretion. *J.B.A.*, 581 N.W.2d at 39. And it is not a violation of Minn.Stat. § 260.185, subd. 3, to adjudicate a juvenile delinquent rather than stay adjudication without explaining why the adjudication is the least restrictive alternative.

### II

As part of the disposition order, the juvenile court ordered that J.L.Y. meet with a physician and take any medications prescribed. The provision resulted from a discussion at the dispositional hearing about J.L.Y.'s ADHD. The juvenile court, in reviewing the record, concluded that J.L.Y.'s behavior might be controlled by Ritalin or some other psychostimulant medication. The court did not make specific findings on the need for medication, but included the medication provision in its order.

■ The court does have the authority to order parents, as part of a juvenile disposition, to provide special treatment and care for a child who is "in need" of treatment for physical or mental health reasons. Minn.Stat. § 260.185, subd. 1(g). And the court can then order such treatment to be provided if the parents fail to comply. *Id.*; *see also Parham v. J.R.*, 442 U.S. 584, 602, 99 S.Ct. 2493, 2504, 61 L.Ed.2d 101 (1979) (discussing broad reach

of parental authority to make decisions for child's medical care and treatment). But the court made no findings, and the record does not support the conclusion that ordering J.L.Y. to take psychiatric medication was necessary or that his parents would have refused to provide necessary treatment for their son. *See* Minn.Stat. § 260.185, subd. 1 (the disposition ordered must be necessary to the child's rehabilitation); Minn. R. Juv. P. 15.05, subd. 2(B)(1) (same).

We also note that the court may only apply Minn.Stat. § 260.185, subd. 1(g), consistent with constitutional principles. The Minnesota Supreme Court has recognized that forced ingestion of psychiatric medication constitutes "intrusive" treatment that "seriously infringe[s] upon a committed mental patient's right to privacy" and therefore requires specific factual findings before the court can order such treatment. *Jarvis v. Levine*, 418 N.W.2d 139, 144 (Minn.1988). This court has recognized that a juvenile in a treatment facility who is administered an anti-depressant drug under court order experiences the same infringement and is entitled to the same protections. *In re Welfare of J.A.J.*, 545 N.W.2d 412, 423 (Minn.App.1996) (Crippen, J., concurring specially). Just as this court found it illogical not to afford a juvenile the protections afforded the mental patient in *Jarvis*, so too should a juvenile who is ordered to take psychiatric medication as part of probation be afforded analogous judicial safeguards. *See J.A.J.*, 545 N.W.2d at 424. As the *Jarvis* factors were not considered or decided, the provision of the disposition that orders J.L.Y. to take any medication prescribed infringes unconstitutionally on his right to privacy.

### III

The juvenile court has broad discretion to select any disposition authorized by statute. *J.B.A.*, 581 N.W.2d at 38. It must, however, make written findings of fact in support of the disposition chosen, including why it serves the child's best interest, what alternatives were presented, and why such alternatives were inappropriate. Minn.Stat. § 260.185, subd. 1.; Minn. R. Juv. P. 15.05, subd. 2(A). Failure to make the required findings is an independent basis for reversal. *In re Welfare of L.K.W.*, 372 N.W.2d 392, 401 (Minn.App. 1985).

The court did not make written findings indicating why the particular provisions of the disposition were chosen, why it was in J.L.Y.'s best interests, or the reasons for rejecting the alternatives. Rather, the preprinted disposition form states that the facts, including why the disposition is in the child's best interest and what alternatives were considered but rejected, were "contained in the transcript of these proceedings and incorporated herewith."

We acknowledge the administrative efficiency of the form and that in many cases the sound reasons for the disposition ordered are on the record, but incorporating the entire transcript into the order does not satisfy the written-findings requirement. *See L.K.W.*, 372 N.W.2d at 401 (findings that neither "comply with the letter or the spirit of the controlling statute and rule" are insufficient). Incorporation does not effectuate the purpose of having written findings, which is threefold: (1) to guarantee that the court consider the appropriate factors in reaching its decision; (2) to enable the parties to understand the court's decision; and (3) to facilitate meaningful appellate review. *In re Welfare of L.B.*, 404 N.W.2d 341, 346 (Minn.App.1987).

Written findings are required to explain whether each of the provisions ordered was necessary for restoring J.L.Y. to law-abiding conduct. *See* Minn.Stat. § 260.185, subd. 1 (disposition must be necessary for rehabilitation); Minn. R. Juv. P. 15.05, subd. 2(B)(1) (disposition must be necessary to restore law-abiding conduct). Appellate review of the transcript in the absence of such findings sug-

gests that, while the court imposed a disposition that it considered to be in J.L.Y.'s best interests overall, consideration was not directed to whether the provisions were necessary to restore him to law-abiding conduct. *See* Minn. R. Juv. P. 15.05, subd. 2(B)(2) (requirement that disposition be in best interest of child does not supersede requirement of necessity); *J.A.J.*, 545 N.W.2d at 415 (disposition cannot just be desirable in a "holistic" sense, but must be necessary to restore the child to law-abiding behavior).

## DECISION

The court's adjudication of J.L.Y. as a delinquent is affirmed. Because neither the evidence nor the law supports inclusion of the medication provision, it is reversed and the provision stricken. The remaining provisions of the disposition are reversed and remanded for written findings.

**Affirmed in part, reversed in part, and remanded.**