### In the Matter of the WELFARE OF J.R.Z.

### No. C4–01–1358.

Court of Appeals of Minnesota.

June 18, 2002.

242

John Stuart, State Public Defender, Charlann Winking, Assistant State Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Elizabeth V. Cutter, Assistant Hennepin County Attorney, Minneapolis, MN, for respondent.

Considered and decided by LANSING, Presiding Judge, ANDERSON, Judge, and PORITSKY, Judge.*

## OPINION

G. BARRY ANDERSON, Judge.

The district court denied appellant's motion to stay adjudication for third-degree criminal sexual conduct, adjudicated appellant delinquent, and ordered him to register as a predatory sex offender and to complete a treatment program. Appellant argues the district court abused its discretion when it adjudicated him delinquent because the adjudication was not necessary for his rehabilitation, it did not serve his best interests, and the court applied the wrong law by requiring special circumstances or an abuse of prosecutorial discretion before it could stay adjudication. Appellant also argues the statute that requires mandatory lifetime registration of predatory sex offenders should not apply to him because he is under the age of 14. We affirm.

## FACTS

In January 1998, the state filed a petition for a child in need of protective services alleging that appellant committed a delinquent act before his tenth birthday. Appellant's parents admitted the petition, which arose from an incident where appellant placed his two-week-old stepsister in a freezer. His stepsister had to be revived by emergency personnel. Appellant was placed at Bush Memorial Home (Bush Me-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

morial), a residential-treatment center in St. Paul, Minnesota.

In April 2000, the state filed a petition for delinquency alleging that appellant committed third-degree criminal sexual conduct, a violation of Minn.Stat. § 609.344, subd. 1(a) (1998), by engaging in sexual contact with another child at Bush Memorial. Appellant pleaded guilty to an amended petition of fifth-degree criminal sexual conduct and the district court adjudicated him delinquent. The court ordered him to remain at Bush Memorial and to provide a DNA sample.

On January 31, 2001, the state filed another petition for delinquency against appellant alleging that appellant, then age 11, again committed third-degree criminal sexual conduct by engaging in sexual contact with an eight-year-old girl at Bush Memorial. Appellant admitted the petition. Appellant requested the district court stay his adjudication because adjudication would compel him to register as a predatory sex offender under Minn.Stat. § 243.166, subd. 1 (2000). On June 5, 2001, the district court adjudicated appellant delinquent, ordered him to register as a predatory sex offender, and ordered him to complete a treatment program at Northwoods Treatment Facility in Duluth, Minnesota. This appeal followed.

### ISSUES

I. Did the district court clearly abuse its discretion when it adjudicated appellant delinquent of third-degree criminal sexual conduct?

II. Does Minn.Stat. § 243.166 apply to an eleven-year-old juvenile who has been adjudicated delinquent for third-degree criminal sexual conduct?

### ANALYSIS

### I.

■ Appellant argues the district court abused its discretion when it adjudicated him delinquent for third-degree criminal sexual conduct because the adjudication was not the least drastic step necessary for his rehabilitation and does not serve his best interests. Appellant also argues the district court applied the wrong law by requiring special circumstances to order a stay of adjudication.

■ Under the rules of juvenile procedure, a court shall adjudicate a child delinquent or continue the case without adjudication "at the same time and in the same court order as the disposition." Minn. R. Juv. P. 15.05, subd. 1. A district court "has broad discretion in determining whether to continue an adjudication in a delinquency proceeding." *In re Welfare of J.L.Y.*, 596 N.W.2d 692, 695 (Minn.App.1999) (citing Minn.Stat. § 260.185, subd. 3 (1998); *In re Welfare of J.B.A.*, 581 N.W.2d 37, 39 (Minn.App.1998), *review denied* (Minn. Aug. 31, 1998)), *review granted* (Minn. Sept. 28, 1999) *and appeal dismissed* (Minn. Feb. 15, 2000).

When it is in the best interests of the child to do so and when the child has admitted the allegations contained in the petition * * * the court *may* continue the case for a period not to exceed 90 days on any one order. Such a continuance may be extended for one additional successive period not to exceed 90 days and only after the court has reviewed the case and entered its order for an additional continuance without a finding of delinquency.

Minn.Stat. § 260B.198, subd. 7 (2000) (em-

phasis added) [1]; *see also* Minn. R. Juv. P. 15.05, subd. 4(A) ("When it is in the best interests of the child and the protection of the public to do so, the court may continue the case without adjudicating the child."). But such a stay of adjudication may not exceed 180 days. *In re Welfare of M.A.R.*, 558 N.W.2d 274, 276 (Minn.App.1997).

■■■ Minn.Stat. § 260B.198, subd. 7, does not require the district court to explain why an adjudication of delinquency is the least restrictive alternative. *In re Welfare of J.L.Y.*, 596 N.W.2d at 695. Most importantly, "[i]mposing an adjudication within the limits prescribed by the legislature is not an abuse of discretion." *Id.* (citation omitted).

The district court concluded that a stay of adjudication was not supported by either the rules of juvenile procedure or case law. The court concluded that the public would not be protected if it were to grant appellant's motion for a stay of adjudication because appellant has committed an act of attempted murder and at least two incidents of criminal sexual conduct. The court recognized that appellant has been in residential treatment for over three years and during those years appellant has exhibited behavior that constituted a danger to himself and to other children; consequently, he requires constant supervision. The court quoted a report written by Bush Memorial staff as part of appellant's discharge from that facility that chronicled appellant's resistance to therapy and the resulting ineffectiveness of that therapy. The court also referenced a report prepared by Mille Lacs Treatment Facility that recommended appellant be placed in a secured and structured treatment program with a psychiatric component to the program. The court acknowledged that the treatment required to rehabilitate appellant would take much longer than the 180–day statutory time limit for a stay of adjudication. The court found

> that there are no special circumstances that would warrant a stay of adjudication in this case. Registration as a predatory sex offender may seem to be a harsh collateral consequence for an eleven year old boy. However, given his repeated behavior and response (or lack thereof) to treatment, it is not an unduly harsh consequence in this case.

We conclude the district court did not abuse its broad discretion by adjudicating appellant delinquent for committing third-degree criminal sexual conduct.

■■■ First, appellant incorrectly argues that a district court's decision to adjudicate must be the "least drastic step necessary to restore law-abiding conduct in the juvenile." *In re Welfare of M.R.S.*, 400 N.W.2d 147, 151 (Minn.App.1987) (citation omitted).[2] Appellant confuses the stan-

1. Former Minn.Stat. § 260.185, which Minn. R. Juv. P. 15.05 still references as the underlying statutory authority for the rule, was repealed and recodified as Minn.Stat. § 260B.198, in 1999. *See* 1999 Minn. Laws ch. 139, art. 4, § 3 (repealer); 1999 Minn. Laws ch. 139, art. 2, § 30 (recodification). As the legislature stated in its bill to repeal and recodify Chapter 260, the changes were not intended to alter pre-existing law. *See* 1999 Minn. Laws ch. 139, art. 4, § 1.

2. This principle was derived through judicial interpretation of Minn.Stat. § 260B.198, subd. 1 (2000), which provides in part that [i]f the court finds that the child is delinquent, it shall enter an order making any of the following dispositions of the case which are deemed necessary to the rehabilitation of the child * * *.
*See generally In re Welfare of L.K.W.*, 372 N.W.2d 392, 398 (Minn.App.1985) (seminal case promulgating "the least drastic step necessary to restore law-abiding conduct" standard). As part of the district court's disposition decision, it ordered appellant to attend

dard for staying *adjudication* with the standard for ordering a particular *disposition*. Each constitutes a distinct inquiry. As this court has previously stated, there is

> nothing in the statute that requires particularized findings on the court's decision to impose or withhold adjudication of delinquency. The particularized findings, including the finding on the least restrictive means for restoring a juvenile to law-abiding conduct, are required in determining a disposition, *but not when deciding whether to adjudicate or stay adjudication*.

*In re Welfare of J.L.Y.*, 596 N.W.2d at 695 (emphasis added). Instead, the district court *may* stay adjudication "[w]hen it is in the best interests of the child to do so and when the child has admitted the allegations contained in the petition * * *." Minn.Stat. § 260B.198, subd. 7. The district court may also consider the protection of the public in determining whether to stay adjudication. Minn. R. Juv. P. 15.05, subd. 4(A). The district court considered both factors and decided not to continue appellant's adjudication; it did not abuse its broad discretion by refusing to stay appellant's adjudication.

Second, appellant's argument that the district court abused its discretion when it adjudicated him delinquent because it applied the law governing adult criminal stays of adjudication is also misplaced. Although the district court did discuss the

adult criminal cases that require "special circumstances" for a district court to properly order a stay of adjudication over a prosecutor's objection,[3] the district court also cited other provisions of Minnesota law that make it clear that there are unique considerations in connection with stays of adjudication in juvenile proceedings. The district court examined Minn. R. Juv. P. 15.05, subd. 4, when it acknowledged the state's argument that appellant's "offense history, his evident resistance to treatment and lack of impulse control and sexual acting out all support an adjudication of delinquency in this case." The district court also acknowledged Minn.Stat. § 260B.198, subd. 7, when it stated that it could only stay adjudication for 180 days. Finally, the court also discussed *In re Welfare of J.B.A.*, where this court concluded that the district court did not abuse its discretion by staying adjudication because the stay was in the juvenile's best interests. 581 N.W.2d at 39. The district court specifically distinguished the present controversy from *J.B.A.*, noting, among other things, that appellant exhibited a propensity for violent criminal activity and an adjudication requiring him to register as a predatory sex offender "is not a seriously disproportionate consequence."

Therefore, the district court relied on proper statutory and case-law authority when it denied appellant's motion to stay adjudication. The district court's decision

---

the Northwoods Treatment Facility in Duluth. Appellant does not argue that this disposition was not the least drastic step necessary to restore him to law-abiding conduct, and this disposition was apparently agreed to by all of the interested parties.

**3.** *E.g., State v. Foss*, 556 N.W.2d 540, 541 (Minn.1996) (stating that the inherent judicial authority to stay adjudication should be exercised sparingly and in "special circumstances"); *State v. Krotzer*, 548 N.W.2d 252,

254–55 (Minn.1996) (district court's decision to stay adjudication over prosecutor's objection did not violate separation-of-powers principles); *State v. Prabhudail*, 602 N.W.2d 413, 414–15 (Minn.App.1999) (deportation as a collateral consequence of an adjudication not a "special circumstance"), *review denied* (Minn. Jan. 18, 2000); *State v. Thoma*, 569 N.W.2d 205, 208–09 (Minn.App.), *aff'd mem.*, 571 N.W.2d 773 (Minn.1997).

to adjudicate appellant delinquent was, therefore, within the limits prescribed by the legislature. Consequently, the district court did not abuse its broad discretion by adjudicating appellant delinquent for committing third-degree criminal sexual conduct.

## II.

 Appellant argues that Minn.Stat. § 243.166, subds. 1(a)(1)(iii), 6(d)(1) (2000) (registration statute), should not apply to him because lifetime sex-offender registration, as applied to juveniles under the age of 14, is inconsistent with the goal of juvenile rehabilitation. Appellant argues that Minn.Stat. § 260B.125 (2000) (certification statute), which permits certification of juveniles as adults only if they are over the age of 14, is inconsistent with the provisions of the registration statute, and, therefore, the registration statute should be interpreted to contain an implicit requirement that a juvenile be over the age of 14 before the lifetime sex-offender registration provisions apply.

 The interpretation of the predatory sex-offender registration statute, like interpretation of all statutes, is a question of law which we review de novo. *Boutin v. LaFleur*, 591 N.W.2d 711, 714 (Minn.1999). Generally, specific statutory provisions control general provisions when the two are in conflict. *See, e.g.,* Minn.Stat. § 645.26, subd. 1 (2000). If the statutory language is plain and unambiguous, we only examine the plain meaning of the statutory language. *Boutin,* 591 N.W.2d at 715; *Olson v. Am. Family Mut. Ins. Co.,* 636 N.W.2d 598, 604 (Minn.App.2001) ("The legislature * * * has made it clear that legislative intent and the spirit of the law, if any such intent or spirit can be ascertained, cannot override the plain language of a statute." (citation omitted)). The registration statute provides, in part:

> A person shall register under this section if * * * the person was charged with or petitioned for a felony violation of or attempt to violate any of the following, and convicted of or adjudicated delinquent for that offense or another offense arising out of the same set of circumstances: * * * criminal sexual conduct under section 609.342; 609.343; 609.344; 609.345; or 609.3451, subdivision 3.

Minn.Stat. § 243.166, subd. 1(a). The Juvenile Court Act defines "person" as "any individual." Minn.Stat. § 260B.007, subd. 11 (2000). A person need not be convicted of, or adjudicated delinquent for, one of the enumerated offenses to invoke mandatory registration; rather, a person that is initially charged with, or the subject of a petition for, an enumerated offense must only be convicted of, or adjudicated delinquent for, "another offense which arose out of the same set of circumstances as the charged predatory offense." *Boutin,* 591 N.W.2d at 716.

A person who is required to register under this section must comply with several statutory requirements. *See generally* Minn.Stat. § 243.166, subds. 1, 4; *Boutin,* 591 N.W.2d at 715. Ordinarily, a person need only remain registered under the statute for ten years after his initial registration "or until the probation, supervised release, or conditional release period expires, whichever occurs later." *In re Welfare of C.D.N.,* 559 N.W.2d 431, 433 (Minn. App.1997) (quotation omitted), *review denied* (Minn. May 20, 1997). Lifetime registration, however, is mandated in certain cases under Minn.Stat. § 243.166, subd. 6(d):

> A person shall continue to comply with this section for the life of that person * * * if the person is convicted of or adjudicated delinquent for any offense for which registration is required under

subdivision 1, * * * and the person has a prior conviction or adjudication for an offense for which registration was required under subdivision 1.

This court has previously concluded that mandatory sex-offender registration as applied to adult offenders is regulatory, not punitive, and thus does not violate the ex-post-facto clauses of either the United States or Minnesota constitutions. *State v. Manning*, 532 N.W.2d 244, 249 (Minn. App.1995), *review denied* (Minn. July 20, 1995). This court later extended the principles articulated in *Manning* to juvenile offenders. *In re Welfare of C.D.N.*, 559 N.W.2d at 433. In *C.D.N.*, this court concluded "that the application of the registration statute to juveniles is nonpunitive." *Id.* Consequently, this court held that the registration statute, as applied to juveniles, did not violate due process and was "not inconsistent with the rehabilitative purpose of the juvenile court system." *Id.* at 434. Two years later, the supreme court agreed that the registration statute did not violate an adult's substantive and procedural due-process rights because it was regulatory, not punitive, in nature. *Boutin*, 591 N.W.2d at 718–19; *see also Kaiser v. State*, 641 N.W.2d 900, 905 (Minn.2002) (stating that the consequences of registering as a predatory sex offender "are civil and regulatory in nature and are imposed in the interest of public safety").

We conclude that the plain language of the registration statute compels appellant's lifetime sex-offender registration. This may, as appellant suggests, be a harsh result. But harsh or not, the decision concerning the reach of the statute rests with the legislature.

First, it is undisputed that appellant has been petitioned and adjudicated delinquent for two of the offenses enumerated in the statute. A petition for delinquency was filed against appellant in April 2000 alleging third-degree criminal sexual conduct;

the district court adjudicated appellant delinquent for fifth-degree criminal sexual conduct, an offense "which arose out of the same set of circumstances as the charged predatory offense." *Boutin*, 591 N.W.2d at 716. Moreover, a petition for delinquency was filed against appellant alleging third-degree criminal sexual conduct for the January 2001 incident and appellant admitted he engaged in sexual contact with the eight-year-old girl. Therefore, appellant's conduct has satisfied the statutory criteria requiring lifetime registration.

Second, the registration statute is mandatory and does not provide an explicit exception for juveniles under the age of 14. The general registration provision states that a person *shall* register if the person was petitioned and adjudicated delinquent for one of the enumerated offenses. Minn. Stat. § 243.166, subd. 1(a). The lifetime registration provision also provides that a person *shall* continue to comply with the registration statute for the life of the person if the person is adjudicated delinquent for an enumerated offense and the person has a prior adjudication for an enumerated offense. Minn.Stat. § 243.166, subd. 6(d). Generally, "shall" is mandatory unless another intention clearly appears in the statute. Minn.Stat. § 645.44, subd. 16 (2000); *State v. Humes*, 581 N.W.2d 317, 319 (Minn.1998) ("The canons of statutory construction provide that 'shall' is mandatory." (citation omitted)); *see also Kaiser*, 641 N.W.2d at 910 (Page, J., dissenting) (noting that the statute "makes registration mandatory in all cases without exception" and "makes clear that the requirement may not be modified").

Finally, appellant offers no reason why this court should not follow the plain language of the statute other than arguing that the registration statute is inconsistent with the certification statute and that lifetime registration is a severe consequence for an eleven-year-old boy.

The certification and registration statutes, however, are not in obvious conflict, and therefore need not be reconciled, because they address different legislative concerns. *But see In re Registrant J.G.,* 169 N.J. 304, 777 A.2d 891, 910 (2001) (assuming that the New Jersey registration and certification statutes are "conflicting statutory provisions that relate to a common subject" and therefore must be interpreted harmoniously). The certification statute permits the state to charge juveniles over the age of 14 as adults principally because a more lenient juvenile-court disposition may be inimical to public safety, and the punitive measures afforded by an adult criminal disposition more appropriately fit the offense. *See generally* Minn.Stat. § 260B.125, subd. 4 (2000). The registration statute, on the other hand, "is not punitive because it serves the regulatory purpose of assisting police investigations" and therefore "is not inconsistent with the rehabilitative purpose of the juvenile court system." *In re Welfare of C.D.N.,* 559 N.W.2d at 433, 434 (citation omitted)[4]; *see also* Minn.Stat. § 243.166, subd. 7 (2000) (stating that predatory sex offender registration information "may be used only for law enforcement purposes"); *Kaiser,* 641 N.W.2d at 907 ("The regulatory non-punitive nature of the statute is further reflected in its clear purpose—to keep law enforcement informed as to a predatory offender's whereabouts.").

Nevertheless, although we conclude that the registration statute's lifetime registration provisions apply to appellant, at age 11, we again "invite the legislature to review the prudence of requiring all juveniles adjudicated for criminal sexual conduct to register as predatory sexual offenders." *In re Welfare of C.D.N.,* 559 N.W.2d at 435.

## DECISION

The district court did not abuse its broad discretion when it refused to stay appellant's adjudication for third-degree criminal sexual conduct. Moreover, the district court did not err by ordering appellant to register as a predatory sex offender under Minn.Stat. § 243.166, because the plain language of the predatory sex offender registration statute does not provide an exception for juveniles under the age of 14.

**Affirmed.**

---

4. Indeed, the legislature has not acted to ameliorate the arguably harsh consequences of the registration statute as applied to juvenile sex offenders; rather, it has acted to expand the number of individuals subject to mandatory lifetime registration. In 2002, the legislature enacted, and the governor signed, a bill that expanded lifetime registration to those who have been twice convicted of, or adjudicated delinquent for, any offense for which registration was "or would have been" required under the statute. 2002 Minn. Laws ch. 222, § 1 (approved Feb. 28, 2002) (amending Minn.Stat. § 243.166, subd. 6(d)(1) (Supp.2001)).