Jesson, Judge
When appellant C.S.N. was in tenth grade, a younger student performed oral sex on him in a hallway at their school. C.S.N. pleaded guilty to fifth-degree criminal sexual conduct, and the district court continued the case without an adjudication of delinquency for two 180-day periods. After C.S.N. violated multiple terms of his probation, the district court revoked the stay and adjudicated him delinquent. C.S.N. argues that the district court lost subject-matter jurisdiction (the power to hear and decide the case) before it adjudicated him delinquent. We agree and reverse and remand.
FACTS
This case began with a lunchtime conversation between appellant C.S.N., a tenth grader, and H.A., a seventh grader. In that conversation, C.S.N. asked H.A. for oral sex. And after C.S.N. repeatedly insisted, H.A. agreed and the two went to a school hallway where H.A. performed oral sex on C.S.N. The incident occurred on March 1, 2015. H.A. was 13 years old at the time. C.S.N. was 15 years old.
H.A. reported the incident to police in September 2015.[1] The next month, C.S.N. was charged with felony third-degree criminal sexual conduct with a victim between the ages of 13 and 15 years old, by an actor more than 24 months older.[2] Pursuant *430 to a plea agreement, C.S.N. pleaded guilty to gross misdemeanor fifth-degree criminal sexual conduct, nonconsensual sexual contact.[3] The district court accepted this plea and ordered a pre-disposition report.
The pre-disposition report noted that C.S.N. has support from his family, that he does well in school, and that he has no previous record. C.S.N. engaged in a psychosexual evaluation, which found that he has a low risk of sexual recidivism, does not have any deviant sexual interest in younger children, does not have obsessive sexual interest, and did not make threats or use excessive violence or weapons in committing this offense. The pre-disposition report recommended continuing the case without adjudication[4] for two six-month periods (approximately 180 days) and to place C.S.N. on probation with conditions. In an order issued on August 19, 2016, the district court agreed with this recommendation and imposed two 180-day continuances without adjudication.
C.S.N. violated the terms of his probation on multiple occasions. First, he was charged with, and later admitted to, disorderly conduct that occurred in October 2016. Then in January 2017, C.S.N. tested positive for marijuana use, was charged with and later admitted to shoplifting, and was charged with a felony drug offense. And in May 2017, C.S.N. was charged with a misdemeanor drug offense, reported to his probation officer that he had recently smoked marijuana, and was terminated from sex-offender treatment.[5] Following the most recent violations, C.S.N.'s probation officer filed a violation report on May 30, 2017.
Prior to the hearing on the alleged probation violations, the defense filed a motion to dismiss the proceeding, arguing the district court lacked jurisdiction. The district court denied the motion and held a hearing on the probation violations. C.S.N. admitted to the violations, and the court revoked his stay and adjudicated him delinquent of fifth-degree criminal sexual conduct, placing him on indefinite probation, and requiring him to register as a sex-offender and to provide a DNA sample.
C.S.N. appeals.
ISSUE
Did the district court lose subject-matter jurisdiction to adjudicate C.S.N. delinquent because the court continued the case without adjudication for 360 days without conducting a review after the first 180 days?
ANALYSIS
C.S.N. argues the district court lost subject-matter jurisdiction over him because it improperly continued the case without adjudication for two 180-day periods at the original time of disposition and never reviewed his case during the first 180-day *431 period, in violation of Minnesota Statutes section 260B.198, subdivision 7. Because this was improper, he argues the district court lost subject-matter jurisdiction over the case after the initial 180-day period. And since the violation report was filed well after the first 180-day period lapsed, his delinquency adjudication must be reversed. We agree.
Appellate courts review questions of statutory interpretation and subject-matter jurisdiction de novo. In re Welfare of M.J.M. , 766 N.W.2d 360, 362 (Minn. App. 2009), review denied (Minn. Aug. 26, 2009). "Subject-matter jurisdiction is a court's power to hear and determine cases that are presented to the court." State v. Losh , 755 N.W.2d 736, 739 (Minn. 2008). Lack of this jurisdiction can be raised by either party at any time, and jurisdiction cannot be conferred on the court by waiver or consent. M.J.M. , 766 N.W.2d at 364.
To evaluate whether the district court had the power to hear and decide this probation violation issue, we turn to the statute that sets out the procedure to stay the adjudication of a juvenile case, Minnesota Statutes section 260B.198, subdivision 7(a). The statute states:
When it is in the best interests of the child to do so ... the court may continue the case for a period not to exceed 180 days on any one order. The continuance may be extended for one additional successive period not to exceed 180 days, but only with the consent of the prosecutor and only after the court has reviewed the case and entered its order for the additional continuance without a finding of delinquency.
Minn. Stat. § 260B.198, subd. 7(a) (emphasis added). The same requirements are stated in Minnesota Rule of Juvenile Delinquency Procedure 15.04, subdivision 4(B).
To determine whether the district court retained jurisdiction under this language, we engage in statutory interpretation, the goal of which is to determine the intent of the legislature. State v. Jones , 848 N.W.2d 528, 535 (Minn. 2014). We begin by looking at the plain language to determine whether the statute is ambiguous on its face. Larson v. State , 790 N.W.2d 700, 703 (Minn. 2010). A statute is only ambiguous if it susceptible to more than one reasonable interpretation. State v. Fleck , 810 N.W.2d 303, 307 (Minn. 2012). If it is unambiguous, we interpret the statute based on its plain meaning. Am. Tower, L.P. v. City of Grant , 636 N.W.2d 309, 312 (Minn. 2001).
We are satisfied that the questioned statute is unambiguous. It plainly limits a court to only issue one continuance, up to 180 days, and requires a court's review prior to extending that continuance for another 180 days. See Minn. Stat. § 260B.198, subd. 7. We do not discern an alternative reasonable interpretation. Nor do the parties suggest one. Here, the district court continued the case without adjudication for two 180-day periods at the initial disposition proceeding and failed to review the case within the first 180-day continuance to extend the continuance an additional 180 days. The district court did not comply with the plain language of the statute.
The district court acknowledged its mistake, stating "this Court's dispositional order, which continued the case for one year without a finding of delinquency, did not comply with the precise requirements of Minn. Stat. § 260B.198, subd. 7." (Emphasis added.)[6] But the district court reasoned *432 that the time limit for jurisdiction was the time limit for continuing adjudication-two 180-day periods, for a total 360 days, even though the court failed to conduct a review of the case during the first 180 days. See Minn. Stat. § 260B.198, subd. 7(a). It relied on M.J.M. , which allowed for the court's jurisdiction to continue up until the time limit for continuing adjudication, even when the continuances were not properly ordered and no review was conducted, to support its decision. 766 N.W.2d at 363-64.
But the precise requirements of a statute are important. And it is persuasive that M.J.M. , the case the district court relied on, contemplated an earlier version of the statute, which only allowed district courts to continue a case for 90 days, and required the district court to review the case again before extending that continuance for another 90 days. See Minn. Stat. § 260B.198, subd. 7 (2012). There were practical challenges with the application of this earlier statute, as it did not always provide adequate time for juveniles to access needed services.[7] But in 2014, the legislature extended the length of these possible continuances from 90 to 180 days. 2014 Minn. Laws ch. 312, art 6, § 3, at 2148-49. And the legislature did so with the express intent to provide more time for juvenile offenders to access and complete needed services, such as complex sex-offender treatment, prior to the end of the continuance period. See Hearing on H.F. No. 807 Before the Judiciary Fin. and Policy Comm. (Mar. 26, 2014) (testimony demonstrating that practitioners desired more time to ensure juveniles were able to access appropriate services). In sum, the legislature considered the challenge posed by the previous statute and amended the statute to address it.[8]
Our plain-language interpretation of the current statute also finds support in the structure and application of the juvenile justice system. Structurally, we have a juvenile justice system-with its own statutes and rules-because we acknowledge that juveniles are different from adults and require different support from the courts. See Minn. Stat. § 260B.001 (2016) (stating that juvenile justice should be pursued through means that "recognize the unique characteristics and needs of children, and that give children access to opportunities for personal and social growth").[9] And in application, *433 juveniles need immediate intervention when engaging in inappropriate behavior. See Justice Joan E. Lancaster & Cheryl W. Heilman, Juvenile Justice in Minnesota: Making A Difference? , Bench & B. Minn., Apr. 2001, at 27, 28 (stating "the most effective juvenile interventions are those that are swift and consistent" and "[j]uveniles need direct and immediate consequences") (citing Office of Juvenile Justice and Delinquency Prevention, Guide for Implementing the Comprehensive Strategy for Serious, Violent and Chronic Juvenile Offenders 9 (1995) ). Requiring district court review of a case in the first 180 days of a juvenile's time on probation provides valuable means to intervene quickly to help a juvenile offender be successful in the community and to provide additional accountability measures before the juvenile's problems escalate.[10]
Finally, the rules of juvenile delinquency procedure describe these statutory timeframe requirements as jurisdictional. Minn. R. Juv. Delinq. P. 15.04, subd. 4(F). The rule states that a "probation revocation proceeding to adjudicate the child on any allegation initially continued without adjudication must be commenced within the period prescribed by rule 15.05, subdivision[ ] 4 (B) ... or juvenile court jurisdiction over the charges terminates." And rule 15.05, subdivision 4(B), includes the same requirements contained in Minnesota Statutes section 260B.198, subdivision 7.[11]
Here, the district court continued the case without adjudication for two 180-day periods at the initial disposition proceeding and then failed to review the case within the first 180-day continuance to extend the continuance time, in contravention of the statute, the structure and application of the juvenile justice system, and the rules of juvenile delinquency procedure. As a result, the court lacked jurisdiction at the time it adjudicated C.S.N. delinquent.
DECISION
The plain language of Minnesota Statutes section 260B.198, subdivision 7, which is consistent with the purpose and structure of the juvenile justice system, requires that a district court issue only one 180-day continuance at a time and requires review of the case before the court may extend the continuance for another 180 days. When a court fails to conduct this review, it loses jurisdiction to adjudicate a juvenile delinquent after the initial 180 days. Because there was no review here and no violation filed until May 2017, after *434 the initial 180-day continuance ended, the district court lost jurisdiction to consider any violation or to adjudicate C.S.N. delinquent.[12] Therefore, the district court erred when it adjudicated C.S.N. delinquent of fifth-degree criminal sexual conduct. We reverse and remand with directions to dismiss the petition against C.S.N.
Reversed and remanded.

Police interviewed C.S.N. who admitted to the sex act, but provided a different account of events. He asserted that the two had been talking for multiple weeks, and that H.A. approached him and offered to perform oral sex on him, and that the oral sex took place at H.A.'s house.

In violation of Minnesota Statutes section 609.344, subdivision 1(b) (2014).

In violation of Minnesota Statutes section 609.3451, subdivision 1(1) (2014).

A juvenile court may, without the consent of the prosecution, continue a case without adjudication-without determining that the juvenile is delinquent. Minn. Stat. § 260B.198, subd. 7(a) (2016). To do so, a court must find that the charged allegations have been proved, and place the juvenile under probationary supervision with conditions prescribed by the court. In re Welfare of C.J.H. , 864 N.W.2d 194, 198-99 (Minn. App. 2015), rev'd on other grounds , 878 N.W.2d 15 (Minn. 2016). If the juvenile complies with the probation conditions, he or she can avoid a delinquency finding altogether. But if the juvenile violates the terms of his or her probation, the juvenile can be adjudicated delinquent. See id.

C.S.N. was terminated from sex-offender treatment because of allegations of crimes including the disorderly conduct, shoplifting, and drug charges.

The district court ordered two 180-day continuance periods for a total of 360 days, the court refers to this time period as one year.

See M.J.M. , 766 N.W.2d at 362 (stating that the district court initially provided for an extended stay of adjudication because it was "necessary for the child's rehabilitation and his/her personal and social growth"); In re Welfare of M.A.R. , 558 N.W.2d 274, 276 (Minn. App. 1997) (stating that the district court issued an improper continuance to accommodate relevant treatment program for the juvenile).

We are aware of an unpublished decision from this court that reached a different result. But there, the court held a hearing to review the case within the first 180-day stay period. No such hearing took place here.

As detailed in the Minnesota Supreme Court decision in State v. Ali , 895 N.W.2d 237, 243 (Minn. 2017), cert. denied sub nom. Hassan Ali v. Minnesota , --- U.S. ----, 138 S.Ct. 640, 199 L.Ed.2d 543 (2018), there is recent U.S. Supreme Court jurisprudence outlining the fundamental differences between juveniles and adults. In Roper v. Simmons , 543 U.S. 551, 569, 125 S.Ct. 1183, 1195, 161 L.Ed.2d 1 (2005), the court determined three general distinctions exist. First, juveniles lack maturity and have an underdeveloped sense of responsibility for their actions, and it is in recognition of this immaturity and irresponsibility that states prohibit juveniles from voting, serving on juries, and marrying without parental consent. Roper , 543 U.S. at 569, 125 S.Ct. at 1195. Second, juveniles are more vulnerable and susceptible to negative influence and outside pressure and less in control of their environment. Id . And last, a juvenile's character is not as well-formed as an adult-the "personality traits of juveniles are more transitory, less fixed." Id . at 570, 125 S.Ct. at 1195. It is based on these differences that the justice system should treat juveniles differently. See id ., 543 U.S. at 571, 125 S.Ct. at 1196 (considering and rejecting the imposition of the death penalty on individuals who committed their offenses as juveniles).

Of course, the court would have had the discretion to adjudicate C.S.N. delinquent at that time as well. See In re Welfare of J.R.Z. , 648 N.W.2d 241, 244 (Minn. App. 2002) ("A district court has broad discretion in determining whether to continue an adjudication in a delinquency proceeding." (internal quotation marks omitted) ).

We acknowledge that not all violations of statute have jurisdictional consequences. See In re Disciplinary Action Against Block , 742 N.W.2d 442 (Minn. 2007) (holding that a failure to follow statutory deadlines, even when written in a mandatory fashion, does not divest the court of subject-matter jurisdiction in the civil-commitment context). Because Minnesota Juvenile Delinquency Rule 15.05, subdivision 4(F), states that a failure to follow the timing procedure (which is also contained in Minnesota Statutes section 260B.198, subdivision 7 ) terminates jurisdiction, we determine the court's failure to adhere to the statute is jurisdictional here.

This does not, however, affect the felony and misdemeanor drug charges pending against C.S.N., or his petty offender adjudications for disorderly conduct and shoplifting, which underlie his probation violations.