*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1363**

In the Matter of the Welfare of: D. M. B., Child.

**Filed April 29, 2024
Affirmed
Connolly, Judge**

Steele County District Court
File No. 74-JV-22-1691

Cathryn Middlebrook, Chief Appellate Public Defender, Gina D. Schulz, Assistant Public Defender, St. Paul, Minnesota (for appellant D.M.B.)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Julia A. Forbes, Steele County Attorney, Sheilan Hamasoor, Assistant County Attorney, Owatonna, Minnesota (for respondent State of Minnesota.)

Considered and decided by Connolly, Presiding Judge; Smith, Tracy M., Judge; and Reilly, Judge.[*]

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

Appellant, a juvenile, challenges his adjudication for second-degree criminal sexual conduct arguing that the district court was biased, that it abused its discretion by admitting the complainant's out-of-court statements, that the cumulative effect of those errors deprived appellant of a fair trial, and that the district court abused its discretion by denying

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

his motion for a stay of adjudication. Appellant also challenges the disposition, arguing that probation conditions prohibiting him from accessing the internet and requiring him to submit to a polygraph are unduly restrictive of his liberty and unconstitutionally overbroad. Because we see no judicial bias, no error, and no abuse of discretion in the adjudication or the disposition, we affirm.

**FACTS**

Appellant D.M.B., a juvenile, was charged with one count of second-degree criminal sexual conduct. The incident giving rise to the charge occurred in the summer of 2020, when appellant was 14 and the complainant was 8 or 9.

Appellant and the complainant, A.W., were then next-door neighbors. The complainant testified that they were playing a hiding game with a group of children in a cornfield. The complainant testified that appellant found her, told her to be quiet, grabbed her hand, put it down his pants, and made her touch his penis for a second or two; she felt skin. The incident was disclosed two years later, in 2022, when the complainant's brother, a year older than she, told her not to watch a particular movie because she might see a penis, and she told him she had already seen appellant's penis.

Their father, B.W., learned of the incident from his older children. B.W. testified that: (1) he and his wife had been licensed as foster parents through MNPrairie and adopted their children, including the complainant, through MNPrairie; (2) he reported the incident to MNPrairie and was asked to bring the complainant for a CornerHouse interview, which he did; and (3) he called an investigator who asked the complainant about the incident.

2

After hearing of the incident, B.W. spoke to the complainant about it. He testified about their conversation, saying that he "didn't try to ask several times or . . . didn't try to extract information because I didn't want to traumatize her, so whatever she said, when she stopped, [I] just . . . took it at that . . . I wasn't trying to put her through anything to try to get it out of her."

The defense raised a hearsay objection when B.W. began to testify about what the complainant had said to him. The district court overruled the objection.

> The information the court has received so far would indicate that this was a spontaneous statement about seeing the penis, a statement that this young child made to a sibling who promptly reported it to [B.W. He] then promptly went to hear directly from the [complainant], so there are substantial guarantees of trustworthiness here, particularly in view of the fact that the parents here are licensed foster providers, so they have had special training in how to address sticky situations like this, and also I believe that licensure, the work that they've done as foster parents and adoptees of children would demonstrate to them the importance of providing accurate information, and clearly [B.W.] has testified that he understood the importance of not questioning the [complainant] but rather receiving information, so I will allow [him] to testify as to what [the complainant] told him.

B.W. went on to testify that "[the complainant] told me that when she was playing ghost in the graveyard and her and [appellant] were out in the cornfield together that he told her, '[I]f you're quiet, I'll let you see my wiener.'. . . [S]he also told me that [appellant] took her hand and put it on his penis."

The district court found that appellant was guilty of second-degree criminal sexual conduct, touching of the actor's intimate parts with sexual intent, of a complainant under age 13 by an actor more than 36 months older, and noted that "[f]or the purposes of the

3

sole charge here, 'sexual contact' is defined as [a] complainant's touching of the actor's intimate parts with sexual or aggressive intent. Minn. Stat. [§] 609.341, subd. 11(a)." Appellant was adjudicated delinquent and placed on probation until January 5, 2025, when he turns 19.

Appellant challenges his adjudication on the grounds that (1) he was deprived of his right to an impartial judge, (2) the district court abused its discretion by admitting the complainant's out-of-court statements, (3) cumulative errors entitle him to a new trial, and (4) the district court abused its discretion in denying appellant's motion for a stay of adjudication. Appellant also challenges the disposition on the ground that the district court (5) abused its discretion by imposing a monitoring provision on appellant's use of the computer, and (6) erred by imposing monitoring and polygraph conditions on appellant.

**DECISION**

**I.      Impartiality of the District Court Judge**

> A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
> > (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

Minn. Code Jud. Conduct Rule 2.11A(1). Whether a judge has violated the Code of Judicial Conduct is reviewed de novo. *See Powell v. Anderson*, 660 N.W.2d 107, 116 (Minn. 2003).

> [J]urisprudence concerning the impartiality of a district court acting as the finder of fact has identified three distinct, but related concepts:  (1) actual bias, which is a strong and deep

4

impression or opinion—in reference to the case or to either party—that prevents the court from considering the case impartially and without prejudice to the substantial rights of one of the parties; (2) emergent bias, which involves conduct that *transforms an unbiased court* into a partial one; and (3) perceived bias, which arises when facts or circumstances might cause the public to reasonably question the impartiality of an unbiased court.

*State v. Lopez*, 988 N.W.2d 107, 117 (Minn. 2023). Appellant argues that he was denied a trial before an impartial district court judge, but we conclude that he has shown neither actual nor emergent nor perceived bias.

"Impartiality requires absence of actual bias against the defendant or interest in the outcome of his particular case." *Id.* (quotations omitted). Actual bias generally pertains to jurors, and "[t]he challenging party has the burden of proving actual bias." *Id.* Appellant has not asserted that the district court had either a bias against appellant or an interest in the outcome of his case.

Emergent bias results from something that happens during a trial to transform an unbiased trier of fact into a finder of fact. *See*, *e.g.*, *Greer v. Greer*, No. C6-01-1958, 2002 WL 554396 at *2-*3 n.1 (Minn. App. Apr. 16, 2002) (remanding a property valuation dispute for the district court to appoint a licensed appraiser because the district court "said that she personally had participated in the realtor's inspection of the property and found many reasons for it to be valued at less than appellants wanted"). There has been no assertion of any emergent bias on the part of the district court here.

Perceived bias "arises in cases that involve facts or circumstances that might cause the public to reasonably question the impartiality of an *unbiased* court." *Lopez*, 988

N.W.2d at 120. An appellate court considers three risks in addressing perceived bias: "'[1] the risk of injustice to the parties in the particular case, [2] the risk that the denial of relief will produce injustice in other cases, and [3] the risk of undermining the public's confidence in the judicial process.'" *Powell*, 660 N.W.2d at 121 (quoting *Liljeberg v. Health Servs. Acq. Corp.*, 486 U.S. 847, 864 (1988)). Appellant's arguments on all three risks are based on the premise that he is innocent.

"Having 'personal knowledge of facts that are in dispute in the proceeding' is one example of when a court's impartiality may be reasonably questioned." *Lopez*, 988 N.W.2d at 120 (quoting Minn. Code Jud. Conduct. Rule 2.11(A)(1)). "Personal knowledge" is that which "arises out of a judge's private, individual connection to particular facts"; it is not the "vast realm of general knowledge that a judge acquires" during day-to-day life as a judge and a citizen. *State v. Dorsey*, 701 N.W.2d 238, 247 (Minn. 2005).

Appellant argues that the district court judge should have recused herself and that he is entitled to a new trial because the district court relied on personal knowledge (A) about the requirements of foster-care licensure when she admitted A.W.'s out-of-court statements, (B) about how victims experience and remember sexual assault, (C) when she cited in her order testimony that had been stricken from the record, and (D) when she speculated at the disposition hearing about the motives of the person who wrote the psychosexual evaluation of appellant.

## A. Foster-care Licensure

Appellant objects to the district court's failure to sustain appellant's hearsay objection to B.W.'s testimony about what the complainant told him, which the district court explained as partially based on the belief that, because B.W. was a licensed foster parent, he would be familiar with the techniques of discussing situations like the incident with a child. But the district court's belief resulted from her own knowledge and experience as a judge familiar with foster parenting. It was not knowledge personal to her or resulting from any personal connection with facts particular to either party; it was rather part of the "[v]ast realm of general knowledge" she had acquired as a judge. *See id.* It did not require that she recuse herself.

## B. Knowledge of Sexual Victims and their Memories

The complainant's testimony was inconsistent with some of her prior statements and with some of the statements of other witnesses: for example, she and her brother disagreed as to whether the cornfield incident occurred when it was sunny or dark outside. The district court found that whether it was sunny or dark outside was "not the most important thing to [the complainant] while she was experiencing this sexual conduct" and went on to observe that it was "common knowledge that when a person is experiencing a traumatic event . . . their focus narrows considerably to the threat at hand. It was the actual conduct [of appellant] itself and [the complainant's] fear at the time that dominated her focus, and these are what she was able to consistently describe."

Appellant argues that the district court failed to cite any support for the observation about those who experience traumatic events. Again, this observation was not personal to

the judge or the parties: it was based on the district court's knowledge acquired through experience as a judge presiding over cases involving victims experiencing traumatic events, and it did not require recusal.

Appellant also invokes the second *Powell* risk, denial of relief producing injustice in other cases, arguing that future defendants will be "unable to defend against an inconsistent accuser because judges may rely on the same 'common' but unsupported and unattributed knowledge to explain away inconsistencies . . . without requiring the state to present expert testimony or prove its case in other ways." But requiring the state to prove what is generally known, such as those in traumatic situations focus on their own imminent danger rather than on irrelevant details, would provide no advantage to either party.

## C. Stricken Testimony

During trial, the district court sustained appellant's hearsay objection to the complainant's brother's testimony that the complainant had told him she had seen appellant's penis and had that testimony stricken from the record. But in its findings, the district court reversed this decision and said that the complainant's statement to her brother had been a "spontaneous and unexpected utterance" and was therefore admissible as hearsay. The district court specifically did not use the word "excited." Appellant argues that the district court was applying the excited-utterance exception set out in Minn. R. Evid. 803(2), which does not apply, based on the circumstances surrounding the statement.

We disagree that the district court was applying this exception and rather believe that the district court was applying the residual hearsay exception set out in rule 807. That

rule excludes from hearsay a statement having the equivalent circumstantial guarantees of

trustworthiness as other excluded statements if:

> (A) [the] statement . . . is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the evidence.

Minn. R. Evid. 807. Thus, we conclude that the district court's decision to reverse the

striking of the testimony and to admit it was not a basis for disqualification.

### D.    Psychosexual Evaluation

Appellant moved for a stay of adjudication on the ground that the district court

needed more time to read appellant's psychosexual evaluation in its entirety, rather than

rely on the summary of it provided in the predisposition report. The district court observed

that the evaluation had been done by someone whose primary responsibility was to

appellant, while the district court's primary responsibility was public safety. Appellant

argues that these were facts outside the record and that the district court failed to provide

the basis for them. But these observations were not facts outside the record and were not

personal to the district court or to appellant: like the observations on foster parents and on

those experiencing trauma, they were based on the district court's general knowledge.

Appellant also invokes the third *Powell* risk, undermining public confidence in the

judicial process, arguing that he has experienced the "nightmare scenario that [innocent]

members of the public worry about," that, "if someone, especially a young child, made a

false accusation of sexual abuse against them, they would [not] receive a fair trial in front

9

of an impartial factfinder." But appellant does not explain why the public would assume that he was innocent and had not received "a fair trial in front of an impartial factfinder," or why the public's confidence in the judicial process is likely to be impaired by allowing judges to rely on matters that are common knowledge or that result from their judicial experience. *See, e.g.*, *Lopez*, 988 N.W.2d at 122 (determining that a judge's reliance on general knowledge of the COVID-19 pandemic was unlikely to undermine public trust in the courts and declining to reverse the judge's decision based on that reliance).

Appellant has not shown actual, emergent, or perceived bias that would have required the district court to be disqualified for bias.

## II. Admission of Out-of-Court Statements

Appellant also argues that, even if the out-of-court statements admitted were not indicia of bias, they were inadmissible under the rules of evidence. "Evidentiary rulings rest within the sound discretion of the district court, and we will not reverse an evidentiary ruling absent a clear abuse of discretion." *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). A challenge to the admission of evidence must demonstrate both that the district court abused its discretion in admitting it and that the challenger was prejudiced by its admission; reversal is warranted only if the error substantially influenced the decision. *State v. Nunn*, 561 N.W.2d 902, 906-07 (Minn. 1997).

Some of the complainant's out-of-court statements were admitted as being consistent with her testimony. Any statement consistent with the declarant's testimony and helpful to the trier of fact in evaluating the declarant's credibility as a witness may be admitted as non-hearsay. Minn. R. Evid. 801(d)(1)(B). The testimony and the prior

10

statement need not be identical. *State v. Zulu*, 706 N.W.2d 919, 924 (Minn. App. 2005). The district court stated that it "did not perceive any inconsistent statements by [the complainant] that were germane to the essential elements of the charge before the Court," and admitted the statements.

As discussed earlier, the complainant's statement to her brother that she had seen appellant's penis was admitted under the residual exception, Minn. R. Evid. 807. In applying Minn. R. Evid. 807, the district court must examine all the relevant circumstances surrounding the making of the statement and consider each of the three prongs set out in the rule. *State v. Hallmark*, 927 N.W.2d 281, 294 (Minn. 2019).

B.W. testified that:

> intellectually, as far as being able to do the [school] work, being able to learn the subjects . . . [the complainant] is around average. Emotionally she is somewhere in the neighborhood of five years behind. She . . . tends to act like a four-or-five-year old constantly and she has to have constant reminders to try to . . . be her age, to try to be 11.

Appellant argues that the complainant's statements did not have guarantees of trustworthiness because her emotional age was five years younger than her chronological age, and B.W. admitted that the complainant sometimes lied. But he also said her lying was "just trying to not get in trouble," and lying to avoid trouble is not uncommon among children.

Some of the complainant's statements to which appellant objected were in her CornerHouse interview. The person who conducted that interview testified, laying foundation that indicated the trustworthiness of the complainant's statements by providing

11

information about her own training and experience. Moreover, other witnesses' testimony corroborated the complainant's out-of-court statements, adding to their trustworthiness.

The complainant's out-of-court statements were offered as evidence of material facts, namely, what appellant had done to her; they were more probative evidence of what he had done than any other testimony, and admitting them served the interests of justice by ensuring that both appellant's past acts and his risk of future offenses were made known. Moreover, even if there had been error in admitting out-of-court statements about other events, it would have been harmless, because the district court found that the cornfield incident which she testified about at trial, satisfied the elements of the offense. The district court did not abuse its discretion by admitting the complainant's out-of-court statements.

## III.    Entitlement to a New Trial

An appellant is entitled to a new trial if cumulative errors had the effect of denying the appellant a fair trial. *State v. Jackson*, 741 N.W.2d 681, 698 (Minn. 2006). In deciding a cumulative-error claim, an appellate court considers both the egregiousness of the errors and the strength of the state's case to determine whether a defendant is entitled to a new trial. *State v. Cermak*, 350 N.W.2d 328, 334 (Minn. 1984). Appellant argues that the cumulative effect of evidentiary errors and judicial misconduct led to the denial of his fair trial. But appellant has not shown either that he was denied a fair trial or that, but for the alleged errors, he would not have been found guilty. The complainant's testimony alone showed that appellant's acts met the elements of the charge of which he was convicted. When "it is not reasonably likely that the district court's [errors] significantly affected the verdict, we conclude that any error did not affect [the defendant's] substantial rights." *State*

*v. Wenthe*, 865 N.W.2d 293, 301 (Minn. 2015). Thus, even if there were egregious errors in admitting evidence, the strength of the state's case was such that the verdict would not have been affected, and appellant would not be entitled to a new trial.[1]

## IV.  Denial of Stay of Adjudication

A district court's decision to continue juvenile delinquency cases without adjudication is reviewed for an abuse of discretion. *In re Welfare of J.B.A.*, 581 N.W.2d 37, 39 (Minn. App. 1998), *rev. denied* (Minn. Aug. 31, 1998). At the beginning of the disposition hearing, appellant moved for a stay of adjudication so that the district court and the state could obtain and read a full copy of appellant's psychosexual evaluation before the hearing. The probation representative who had prepared the predispositional report (PDR) told the district court that the portions of appellant's psychosexual evaluation she included in the PDR "fairly and accurately summarize[d] the information relevant to disposition." The district court denied the motion for the stay.

Appellant argues that the district court's failure to read appellant's full psychosexual report before adjudicating him was an abuse of discretion because he was "entitled to a new dispositional hearing in front of a judge who has considered all the information." A district court may stay adjudication "[w]hen it is in the best interests of the child to do so

---

[1] Appellant was charged with only one offense, in connection with which "sexual contact" was defined as complainant's touching of the actor's intimate parts "with sexual or aggressive intent." Minn. Stat. § 609.341, subd. 11(a)(ii) (Supp. 2019). The complainant answered "Yes" when asked if the incident in the cornfield was the "only time [appellant] made you touch him." But some of the other witnesses' testimony pertained to another incident, about which the complainant testified that she could remember very little. That incident was not related to appellant's charge or adjudication, and we do not address it.

. . . and when the child has admitted the allegations contained in the petition." Minn. Stat. § 260B.198. subd. 7(a) (2022). The district court "may also consider the protection of the public in determining whether to stay adjudication." *In re Welfare of J.R.Z.*, 648 N.W.2d 241, 246 (Minn. App. 2002), *rev. denied* (Minn. Aug. 20, 2002). Because the district court in *J.R.Z.* had considered both factors, there was no abuse of discretion in its refusal to stay adjudication. *Id.* at 247.

Here, appellant did not admit the allegations contained in the petition, and the district court noted that it had considered both the best interest of appellant, i.e., not offending against anyone else, and public safety. The district court also stated that "everyone wants [appellant] to come out of this in a place where he's not going to offend against anyone else" and being responsible for public safety "really falls on the Court and ultimately on probation." There was no abuse of discretion in not staying the adjudication of delinquency.

## V.    Computer Monitoring

A district court has broad discretion in sentencing, but that discretion is reviewed carefully when a condition restricts fundamental rights. *State v. Franklin*, 604 N.W.2d 79, 82 (Minn. 2000).

As a condition of his probation, the district court ordered appellant to install probation-approved computer-monitoring software on his devices with internet capability. The district court explained:

> While I don't dispute that [appellant] may have reported accessing pornography once a month, . . . that's a trust but verify kind of scenario because, if he is accessing pornography

14

more frequently and depending on the type of pornographic material he's accessing, that can interfere with his successful completion of the [psychoeducational] programming. That's the primary goal here, so that's why I'm authorizing the use of [monitoring].

Appellant argues that the monitoring is overbroad and that the district court abused its discretion by failing to consider less invasive methods, such as having appellant's parents, not probation, supervise his internet use, or having appellant's probation officer search his computer or phone if there was "reasonable suspicion" that appellant was violating the condition. But the only way to know whether appellant is violating the "no use of pornography" condition of both his probation and his programming is to verify whether he is using it by installing the appropriate software on his computer. The monitoring requirement was not an abuse of the district court's discretion.

## VI.  Polygraph Conditions

A court has authority to order sex offenders to submit to polygraph testing "to ensure [their] compliance with the terms of probation or conditions of release." Minn. Stat. § 609.3456(a) (2022). The district court stated that, "probation believes that there is a specific need in terms of public safety and in terms of [appellant's] progress that he complete a polygraph, [and] probation is permitted to arrange for that polygraph."

Appellant argues that, like the monitoring, the polygraph is unduly invasive of his privacy. But the purpose of a polygraph would be determining if appellant needs a higher level of treatment than that recommended in the PDR, and the right to order a polygraph is essential to making that determination. There was no abuse of discretion in ordering appellant to submit to a polygraph at the discretion of probation.

15

We affirm appellant's adjudication and disposition.

**Affirmed.**